RICHMOND AND JACKSON v. THE D. & S. C. R. Co. AND THE I. C. R. Co.

1. **Contract**: FORMER ADJUDICATION: DIVISIBILITY. A contract between the D. & S. C. Railroad Company and the Dubuque Elevator Company contained the following stipulation: That the elevator company should "erect a building suitable for receiving, storing, delivering and handling all grains that shall be received by the cars of said railroad company not otherwise consigned." A supplemental contract, subsequently entered into by the same parties, provided that the elevator company should receive and discharge for the said railroad company, "all through grain at one cent a bushel." The contract provided for its continuance for a term of fifteen years. In an action against the railroad company for its refusal to comply with the terms of the contract it was *held*,

    *First.* That a recovery in a former action would constitute no bar to an action for subsequent breaches of the same contract.

    *Second.* That while a single breach of the contract would entitle the injured party to treat it as wholly abandoned, the law would not compel him to that course. The contract must be regarded as a whole.

2. ———: CONSTRUCTION: FRAUDULENT EVASION. Grain intended by its shippers to be in fact "through grain," i. e., to pass from points west of Dubuque to points east thereof, would not be taken out of the terms of the contract by consignment to Dubuque, and being re-billed thence to the place of destination. The law will not sanction such a fraudulent evasion of the contract.

3. ———: EVIDENCE: WHAT WAS COMPETENT. The reports of the D. & S. C. R. Co., and of the I. C. R. Co. for former years, showing the amount of grain then brought to Dubuque; the testimony of an expert showing the annual per centum of increase in the amount of grain; and of other witnesses to establish the extent of country tributary to the defendant's road, the increase of tillable land, population, etc., therein, were *held* to be competent as tending to fix the amount of "through grain" carried by defendant.

4. ———: ———: ———. The admissibility of such evidence is not defeated by the fact that defendants had more certain evidence upon the point to be established. Both were admissible, their weight and credibility being questions for the jury.

5. ———: BREACH OF: MEASURE OF DAMAGES. In estimating the damages for breach of the contract, the plaintiffs were *held* to be entitled to recover for the loss of profits resulting to them from their being deprived of the storage of the grain.

6. ———: ———: ———. *Held*, also, that the plaintiffs were entitled to recover for loss of profits which would have accrued to them from the handling of grain in sacks, or from the sacking and cleaning of grain, and that the difficulty of ascertaining the *amount* of damages herein is no ground for denying the *right* of recovery.

7. ———: ———: ———. Since plaintiffs were bound to discharge the grain in defendant's cars if the latter so elected, and " trim " and level it, the expense of so doing is a proper element of recovery.

8. ———: PUBLIC POLICY: STATUTES OF THE UNITED STATES. The Supreme Court of this State held (33 Iowa, 422,) and the Supreme Court of the United States affirmed the decision, (19 Wallace, 585,) that this contract was neither in conflict with federal legislation nor void as against public policy.

9. ———: DAMAGES: RECOVERY FOR BUILDINGS, ETC. The breach of the contract by the defendants enabled the plaintiffs at any time thereafter, to maintain an action for the value of the buildings and machinery erected in accordance therewith.

10. ———: ———: APPRAISEMENT. The defendants, having repudiated the contract, could not avail themselves of the stipulation that, at the expiration of fifteen years they should pay the appraised value of the buildings and machinery, and the plaintiffs could ask an assessment of their value by a jury.

11. ———: EVIDENCE. Evidence of the cost of the buildings was admissible, not to determine the measure of plaintiff's damages, but to aid the jury in determining their present value.

## *Appeal from Dubuque District Court.*

### FRIDAY, MARCH 19.

THIS action was commenced February 3d, 1872, to recover damages for a breach of a certain contract between the defendant, The Dubuque & Sioux City Railroad Company and the Dubuque Elevator Company, corporations organized under the laws of this State. The plaintiffs have become the owners of the property of the Dubuque Elevator Company, and the assignees of its rights and interest in the contract. This contract is in writing, as follows:

"CONTRACT BETWEEN THE D. & S. C. R. R. Co. AND THE DUBUQUE ELEVATOR, MADE AUG. 22, 1860.

Said railroad company lease to the Dubuque Elevator, in consideration of the covenants and agreements hereinafter set

forth, a piece of ground, for the erection of a grain elevator and grain store house, for the term of fifteen years from the date hereof.

Said land is to be mutually selected by the parties hereto, on the depot lands of said railroad company, in Dubuque; and to be sixty-five feet square or thereabouts, but liable to be increased in case the business of the country warrants it, as hereinafter mentioned.

The Dubuque Elevator shall have the exclusive possession of said land so long as they comply with the terms of this lease.

The Dubuque Elevator covenant and agree:

1st. That they will erect a building suitable for receiving, storing, delivering and handling all grains that shall be received by the cars of said railroad company not otherwise consigned; and that they will, from time to time, make such additions thereto as the amount of the business to be done may require.

2d. That they will pay said railroad company the yearly rent of five dollars.

3d. That they will not charge for receiving, storing, delivering and handling grain higher rates than are charged in the same business at Chicago, Illinois; but the business shall be conducted upon the same terms as may be usually charged at Chicago from time to time.

4th. That at the expiration of fifteen years the Dubuque Elevator will, at the option of said railroad company, accept of and enter into a renewal of this for another fifteen years, exactly on the same terms as this lease, or accept in full payment for their buildings, machinery, and property necessary for the receiving, storage, delivery and handling of grain and the conducting of such business, the amount for which the same, by an appraisal may be ascertained to be worth.

The Dubuque & Sioux City Railroad Company covenant and agree to maintain the Dubuque Elevator in the peacable possession of said premises so long as they abide by and perform the covenants of this lease; and further covenant that they will not erect a similar building, namely, a building for

the receiving, storing, delivering and handling of grain in the city of Dubuque; and further covenant, that they will not grant or lease to any other party or parties, during this lease, the right to erect any such building in Dubuque.

And it is understood and agreed, that this instrument is entered into by said parties in their own behalf and in behalf of their legal representatives respectively, and binding on them and their legal representatives as fully and effectually as if expressly so written in the covenanting clauses.

Witness the hands of the officers of the companies and the corporate seal. HERM. GELPCKE,
President.

JAMES M. McKINLAY,
Sec'y D. & S. C. R. R. Co.

JNO. R. THORN.
President."

SUPPLEMENT.

"The Dubuque Elevator agree to receive and discharge for the Dubuque & Sioux City Railroad Company all through grain at one cent a bushel, and shall make no charge for storage, unless the grain is in store more than ten days. In case the grain is held in store for the railroad company for more than ten days, the Dubuque Elevator shall have one cent a bushel for the first ten days (or fraction of ten days) following the ten days without charge, and shall have one-half cent a bushel for every additional ten days or fraction of ten days.

And the Dubuque & Sioux City Railroad Company agree that the Dubuque Elevator shall have the handling of all through grain, and agree to pay the Dubuque Elevator one cent a bushel for receiving and discharging thereof as aforesaid. And agree to pay for storage as aforesaid, when the same exceeds ten days.

This agreement to continue until the expiration of the contract to which it is supplementary.

Witness the hands of the officers of the companies and

the corporate seal of Dubuque & Sioux City Railroad Company.                                      HERM. GELPCKE,
                                                          President.
JAMES M. McKINLAY,
          Sec'y D. & S. C. R. R. Co.

                                              JNO. R. THORNE,
January 22d, 1861.                                  President."

On the 13th day of September, 1867, the Dubuque & Sioux City Railroad Company leased its road and other property to the Illinois Central Railroad Company, under which the latter agreed to assume the contract, and supplement thereto, above set out, between the first named railroad company and the Elevator Company.

This is the third action brought for breaches of this contract by and against these same parties. The first was for damages resulting to the plaintiffs upon a breach of the contract, caused by the defendants refusing to give plaintiffs the handling of the "*through* grain" carried to Dubuque on defendant's railroad, and passed through that city between the first day of October, 1867, and the 23d day of January, A. D. 1868, in which action plaintiffs recovered judgment for $4,365.12. (See 26 Iowa, 191.)

The second action was brought for damages suffered by plaintiffs for a breach of the contract in the refusal by defendant to give to plaintiffs the handling of the "*through* grain" brought to Dubuque and passed through it by defendants, between the 23d day of January, 1868, and the first day of May, 1870, in which action plaintiffs recovered a judgment for $73,136. (See 33 Iowa, 422.)

This action is brought to recover damages as for a total breach of the contract. There was a verdict and judgment for plaintiffs for $294,759.31, and costs. Defendants appeal.

*Crane & Rood* and *H. B. Fouke*, for appellants.

*Griffith & Knight* and *Platt Smith*, for appellees.

MILLER, CH. J.—I.  Appellant's counsel say that there was error in the refusal of · the court to give the first, second, and third instructions asked by them, and in giving certain parts of the charge to the jury which embodied rules of law the opposite of those in the instructions asked.  These latter embody the proposition now urged with great earnestness and ability by appellant's counsel, that, prior to the commencement of the last action, there was an entire and absolute abandonment of the contract by the defendants, a total breach, and that the judgment recovered in that action is a bar to any further recovery in this action.  This same question was made and urged in the case in 33 Iowa, 422, by the same learned counsel, with their accustomed zeal.  It was there claimed, upon the same grounds, that the first action was a bar to a recovery in the second, but it was held that the contract was divisible, and the judgment recovered in the first action would not constitute a bar to an action for future breaches of the contract. Mr. Justice BECK, in delivering the opinion of the court, on page 495, says: " The contract must be regarded as a whole; the rights and obligations of the parties depend upon, and are determined by it as a whole.  One of the parties, by a voluntary breach of one or all of its covenants, cannot impose upon the other the necessity of regarding it as wholly abandoned, or treating the breach as a total breach, whereby the innocent parties would be deprived of benefits and advantages that would otherwise flow from them.  They would have the right so to treat it, but the law will not compel them to pursue that course."  The judgment was, in that case, expressly ordered to be " without prejudice to plaintiff.'s claim for damages after the first day of May, 1870."  We regard that case as settling the question in favor of the plaintiffs' right to sue for and recover damages for further breaches of the contract occurring after May 1, 1870.

II.  The court, in the 26th paragraph of the charge, instructed the jury that, " if shippers at points west of Dubuque, intending the grain shipped by them to be in fact through grain, that is, to pass

*1. CONTRACT: former adjudication: divisibility.*

*2. _____: construction: fraudulent evasion.*

from the points of shipment to a point east of, or beyond, Dubuque without breaking bulk or changing cars, should so ship grain at such points, consigned to consignees at Dubuque, and such grain should be re-billed by defendants at Dubuque, and be by them sent forward, without breaking bulk or changing cars, to its point of destination east of, or beyond Dubuque; and this system of consignment and re-billing was brought about by defendants, by their putting an extra charge in addition to their regular tariff rates on all through grain not so consigned or re-billed, or by other means, then the grain so consigned and re-billed at Dubuque, and which actually went through without breaking bulk or changing cars, must be considered as through grain within the meaning of the contract, and plaintiffs would be entitled in this action to recover whatever damages they have suffered because of the defendants not allowing them to have the handling of the same, for it would not be competent for the defendants to have grain consigned to consignees in Dubuque for the purpose of evading the contract, or for any other than an actual and legitimate commercial purpose in the ordinary course of business."

Appellant's counsel insist that this instruction was erroneous. We think otherwise. It is in exact accord with the holding in the case in 26 Iowa, *supra*, and the latter portion of the paragraph is in the very language of this court in that case. That language, so far from being "an unfortunate declaration," was on a point in the case, and is in accord with justice, common sense, and the simplest principles of honesty. By the contract between the parties the plaintiffs were entitled to the handling in their elevator of all the "through grain" shipped over the defendant's railroad. Now if the defendants could, by procuring to be consigned to Dubuque, and there re-billing, grain which was shipped upon their road from points west of Dubuque destined to points east of, or beyond it, and which, in fact, was passed through without changing cars or breaking bulk, thereby change the character of "through grain" to that of local grain, and defeat the right of the plaintiffs under the contract to the handling of

such grain in their elevator, then by a fraudulent device—a "*trick*," they would escape the obligation of their contract voluntarily and solemnly entered into. They would thereby reap advantage from their own wrong and fraud. Such results the law never sanctions or allows. There was, therefore, no error in the instruction given, nor did the court err in its refusal to give the fourth, fifth, sixth, seventh, and eighth instructions asked by defendant, which embody an opposite doctrine from that of the instruction given.

III. It is next urged that the court erred in the admission of evidence to establish or show the amount of "through grain" that defendants had carried from May, 1870, up to the time of the trial. To show this, they were permitted to read in evidence the reports of the Dubuque & Sioux City Railroad Company of grain carried for the years 1861, 1862, 1863 and 1864, showing the entire amount of grain brought to Dubuque on their road during those years. Also, a report of the Illinois Central Railroad Company for the year 1869. This was followed up by the testimony of an expert, to show the per centum of increase in the amount of grain of one year over that of another, and this was followed by the evidence of witnesses showing the extent of country tributary to the defendants' road; the counties from which it carried shipments of grain, the nature of these counties, the increase from year to year of the amount of land under tillage, and the increase in the population and business of these counties.

3. ———: evidence: what was competent.

We are of opinion that there was no error in the admission of this evidence. Most certainly the plaintiffs were not obliged to rely upon the books and records of the defendants to show the amount of through grain passed over the road during the period in controversy, but might resort to other evidence for that purpose. They offered the best evidence of which the case was susceptible, and which they were bound to produce. The evidence offered was not secondary, but primary, in its nature, and it all tended to establish the fact of the amount of through grain which had been carried past Dubuque from May, 1870, to the time of the trial.

That the evidence admitted did not fix absolutely and certainly the exact number of bushels of such through grain, is not ground for rejecting it. If the defendants had in their possession competent evidence of the exact amount of through grain carried, and did not introduce it, they cannot complain and say that plaintiffs should have introduced it as the best evidence.

As we have seen, plaintiffs were not bound to rely upon evidence to be furnished them by the parties whom they charged with a fraudulent violation of their contract, but might resort to other evidence within their reach, tending to 4. ——: ——: prove the probable quantity of through grain carried. If defendants had more exact evidence on this point they could have produced it. We do not mean to hold, however, that the accounts kept by defendants in their books and records of the amount of "through grain" carried by them, could have been given in evidence by them, but if thus admissible, it would still remain a question for the jury, upon the whole evidence bearing upon the point, as to the quantity of through grain carried. They might reject, as unreliable, the accounts of the defendants, and find a verdict based upon the evidence given by plaintiffs.

IV.   It is next insisted that the court erred in refusing to give the tenth and twelfth instructions asked by defendants. 5. ——: breach of: measure of damages. These instructions deny the right of plaintiffs to recover for or on account of being deprived of profits that would have been made by them by the storage of grain under the contract. In the case in 33 Iowa, 422, 501, 502, it is expressly held by a majority of the court that the plaintiffs have the right under the contract to recover for loss of profits resulting to them from being deprived of the storage of grain, and the sum of $11,250 was allowed for this item by the court, and added to the judgment below. The question was carefully considered by us in that case, and we see no reason for changing our views on the subject now.

The objections urged by appellants' counsel to paragraphs 29½ and 30 of the charge are the same as those just answered.

In these portions of the charge the court instructed the jury, in accord with the ruling in 33 Iowa, *supra*, that the plaintiffs might recover such sum as damages for a loss of profits on storage as the evidence showed they would have realized therefor between the 1st day of May, 1870, and the time of the trial, if defendants had complied with their contract. The fact that, in the course of business, grain had been left in store from which profits had resulted, was sufficient to sup-. port the conclusion that in the further prosecution of the same business, if both parties complied with their contract, profits would result on storage. The instructions, therefore, are not inapplicable to the evidence.

V. It is next insisted that error was committed in the refusal of the court to give the 9th, 14th, 15th and 16th instructions asked by the defendants, and in giving the 31st paragraph of the charge. This paragraph of the charge affirmed the right of the plaintiffs to recover damages for handling grain in sacks. The instructions refused denied that right. The court charged the jury " that if defendants had complied with the contract and given plaintiffs the handling of grain, as therein contemplated, and in the ordinary and usual course of business thus created, profit would have directly and certainly resulted to plaintiffs from the handling of grain in sacks, or the sacking or cleaning of grain, of which they have been deprived by the defendants' failure to perform the contract, then plaintiffs are entitled to recover in this action all such profits they have lost," etc.

The right of plaintiffs to recover, as set forth in this instruction, rests upon the same principle as their right to recover for loss of profits on grain which would have resulted for storage, if defendants had complied with the contract, and the instruction very clearly states the law applicable to this branch of the case. If the profits here specified would have directly and certainly resulted to plaintiffs, had defendants performed their covenants, then the refusal to perform and the deprivation of plaintiffs of these profits is a direct injury and damage to them, properly measured by the amount of

such profits. The damages thus recoverable are not remote and uncertain, but direct and certain. The fact that the circumstances of the case were such that the *amount* of this damage was not susceptible of being rendered *absolutely* certain by the evidence, is no ground for denying the plaintiffs the right to recover any amount whatever.

VI. The next error assigned is the refusal of the court to give the 28th instruction, asked by defendants, which is as follows: "Under the terms of the contracts sued upon in this action, the plaintiffs were bound not only to receive, but also to discharge all through grain that defendants might require to be so handled in their elevator. To discharge such grain would, under the terms of said contract, require the plaintiffs to put the grain into defendants' cars in case defendant should so elect, and to pay the costs of so doing; hence, if you find plaintiffs are entitled to recover in this action, then in estimating the cost of discharging grain you will include the wages of the men necessary to be employed in trimming or leveling such grain in the cars of defendants."

The court, in the 28th paragraph of the charge, directed the jury that "the profit to be allowed them (plaintiffs), if any, is the difference between what it would necessarily have cost them to receive and discharge the grain had it been delivered to them at their elevator, and the one cent a bushel by contract to be paid them for receiving and discharging it." If the expense of "trimming," or leveling the grain in the cars when discharging it from the elevator, was a part of the expense of delivering, then the jury were directed by the court in the above paragraph of the charge, to consider it and deduct it from the one cent per bushel to be paid for handling, for the court there charges the jury that the profit to be computed as an item of damages is what is left after deducting all the necessary cost of receiving and discharging the grain given them to handle, from the price to be paid for handling. Whether trimming or leveling the grain in the cars in discharging from the elevator is or is not a part of the work or expense of discharging is more a question of fact than of law,

and the instruction was therefore properly refused for this reason, as well as that it was substantially given as far as proper in the charge of the court.

VII.   It is urged that the court committed error in refusing to give the 18th, 19th, 20th, 21st, 22d and 23d instructions requested by appellants.   These instructions embody the view that the contracts sued on are in conflict with certain acts of Congress and against public policy.   This same question was decided aversely to appellants in the case in 33 Iowa, *supra*, and on appeal to the Supreme Court of the United States our decision was affirmed; see 19 Wallace, 585.

VIII.   It is next urged that the court erred in giving the 32d and 33d paragraphs of the charge, and in refusing to give instruction numbered 17½, asked by defendants.   The portions of the charge complained of are as follows:

"32.   Plaintiffs further claim as damages the value of the elevator building and machinery, and in this action are entitled to recover the value of the same."

"33.   By the terms of the contract, at its expiration the defendants would be bound to take such buildings and machinery at an appraisal, but as it is conceded that there has been a total breach of the contract by defendants, plaintiffs are not bound to wait until the expiration of the contract, to get, by an appraisal, the value of such buildings and machinery, but are entitled to recover the value of them in this action, and you should so find by your verdict."

The instruction refused denied the plaintiffs' right to recover the value of the building and machinery.

The contract contains this stipulation:  "That at the expiration of fifteen years the Dubuque Elevator will, at the option of said railroad company, accept of and enter into a renewal of this for another fifteen years, exactly on the same terms as this lease, or accept in full payment for their buildings, machinery and property necessary for the receiving, storage, delivery and handling of grain, and the conducting of such business, the amount for which the same, by an appraisal, may be ascertained to be worth."

Appellant's counsel urge two reasons why, as they insist,

plaintiffs are not entitled to recover, in this action, the value
of the buildings, machinery, etc.; first, because by the language
of the contract the value of these improvements is not pay-
able till the expiration of the fifteen years; second, because
the plaintiffs failed to show any diligence or effort of any
kind to obtain an appraisement of the improvement, which it
is claimed is a condition precedent to their right to recover
for the value.

With regard to the first ground of objection the evidence
shows, and in the language of the charge it is conceded, that
9. ——: dam-  there had been a total breach of the contract by
ages.         the defendants, an utter and entire repudiation
and renunciation thereof. This being the case the plaintiffs
were not required to wait until the end of the fifteen years,
before being entitled to recover for the entire damages. The
law is well settled that if, before the time for performing a
contract arrives, the promisor renounces or repudiates the con-
tract or puts it out of his power to perform, the other party
may at once maintain an action as for a breach thereof, to
recover the damages sustained. *Crabtree v. Messersmith*, 19
Iowa, 179, and cases cited; *Holloway v. Griffith*, 32 Iowa, 409.
This doctrine is peculiarly applicable to this case, for it would
be a most unjust and defective administration of the law to
hold that the defendants may wholly repudiate their contract,
and thereby render plaintiffs' elevator useless to them, and yet
not be required to pay for it, as they have agreed, until
the end of the fifteen years, plaintiffs being, in the mean
time, required to incur great expense in keeping the building
and machinery in proper repair, and to lay out of their money
invested in the same. By the act of the defendants the con-
tract in legal effect is brought to an end so far as they could
do so, and the plaintiffs should be secured in all their rights
under the contract which they would have possessed if the
defendants had performed the agreement, and it were termin-
ated by its own limitation.

In regard to the second ground of objection, that no effort
10. ——: ——:  had been made by plaintiffs to procure an appraise-
appraisement.  ment of the property; the contract provides that

JUNE TERM, 1875. 277

Richmond and Jackson v. The D. & S. C. R. Co. and The I. C. R. Co.

defendants were to take the elevator at an "appraisal," or an appraisement of its value, but it does not provide the manner in which this appraisement should be made, whether by persons mutually chosen by the parties or how. It is doubtful, to say the least, whether plaintiffs, without the concurrence of the defendants could have carried out this part of the agreement. The defendants, having repudiated the contract *in toto*, and there being no mode of appraisement provided for in their agreement, plaintiffs have resorted to the mode which the law furnishes, namely, by submitting the question of the value of the elevator, etc., to a jury. In ascertaining the value they are governed by legal rules, the same that should govern in an appraisement of the property by other persons chosen by the parties.

IX. Lastly, it is insisted that the verdict of the jury as to the value of the elevator, machinery, etc., is excessive and not sustained by the evidence. In ascertaining the value of this property, it was proper that it should be done on the hypothesis that the defendants had kept and performed their contract, and thus made it useful and valuable for the purposes for which it was intended. If the property would have been of the value of fifty thousand dollars under such circumstances, the defendants cannot be allowed to say that by their refusal to perform the contract, the property has been rendered of little or no value, and ask the jury to assess it at such reduced value. They would thereby reap advantage from their own wrong. By their breach of the contract they have reduced the value of plaintiff's property from fifty thousand dollars to ten thousand dollars, thereby gaining forty thousand dollars as a reward for their bad faith, in refusing to comply with and perform their contract. Such a doctrine cannot be entertained. It is neither sanctioned by the law nor sound morals.

We see no reason for disturbing the verdict on this point, as we cannot say it is not sustained by evidence. They have ascertained the value as if the defendants had kept, and performed the agreement on their part, which we have seen was the proper basis of valuation.

There was no error in the admission of the evidence of the

cost of the building, etc. This evidence was not admitted as the measure of plaintiff's damages in this particular, but as a means to aid the jury in arriving at the present value of the building and machinery. For this purpose the evidence was admissible.

11. ——: evidence.

AFFIRMED.