J. B. FARTHING LUMBER CO. v. GALVES-
TON, H. & S. A. RY. CO.   (No. 7063.)

(Court of Civil Appeals of Texas.   Galveston.
June 24, 1915.)

1. CONTRACTS ⬩57 — TRAFFIC CONTRACT —
CONSIDERATION—MUTUAL PROMISES.
    A contract, consisting of a letter from de-
fendant lumber company to the agent of plain-
tiff railroad relative to a side track to a lumber
yard which the defendant was about to purchase,
stating that approximately 99 per cent. of the
freight arriving at the yard would come over
plaintiff's rails and be an exclusive haul, that
defendant would bridge a ditch beside the track,
build its own unloading facilities, and do the
grading work for the extension, and the plain-
tiff's reply that the side track would be put in
order for use, that it would deliver thereon all
freight consigned to defendant over its own
lines, that no cars over other lines or from points
outside the state would be so delivered, except
upon an additional charge of $5, plainly intend-
ing that if the defendant established its lumber
yard plaintiff would construct the siding and
make deliveries thereon, was supported by the
mutual promises of the parties.
    [Ed. Note.—For other cases, see Contracts,
Cent. Dig. §§ 345, 352, 353 ; Dec. Dig. ⬩57.]

2. ACTION ⬩53 — SINGLE OR ENTIRE CAUSE
OF ACTION—BREACH OF CONTRACT.
    Where the railroad repudiated its contract
to establish a siding for a lumber company, and
notified the lumber company thereof before the
time for performance, the repudiation was a
breach of the contract in its entirety and gave
the lumber company only one cause of action to
recover all the damages sustained by the breach,
as the only effect of permitting it to treat the
contract as continuing would be to enable it to
split up its cause of action and bring numerous
suits when it could in one suit recover all the
damages sustained by it.
    [Ed. Note.—For other cases, see Action, Cent.
Dig. §§ 549–551, 553–623 ; Dec. Dig. ⬩53.]

3. INJUNCTION ⬩26—SUBJECTS—VEXATIOUS
SUITS.
    A court of equity has power to enjoin the
bringing of separate suits to vex and harass by
a multiplicity of actions when plaintiff's demand
can be completely litigated in one suit.
    [Ed. Note.—For other cases, see Injunction,
Cent. Dig. §§ 24–49, 54–61 ; Dec. Dig. ⬩26.]

Appeal from District Court, Harris Coun-
ty ; John A. Read, Judge.

Suit for injunction by the Galveston, Har-
risburg & San Antonio Railway Company
against the J. B. Farthing Lumber Company.
Order granting temporary injunction, and de-
fendant appeals.   Affirmed.

D. E. Garrett and Kahn & Williams, all
of Houston, for appellant.   Baker, Botts,
Parker & Garwood, Lane, Wolters & Storey,
and Paul Kayser, all of Houston, for appel-
lee.

PLEASANTS, C. J.   This appeal is from
an order of the district court for the Sixty-
First district, granting a temporary injunc-
tion upon the application of appellee in a
suit in said court brought by appellee against
appellant.
    The case made by the pleadings and evi-
dence is in substance as follows:  In June of

1914, the appellant, a lumber company en-
gaged in the sale of lumber in the city of
Houston, purchased a lumber yard situated
near the tracks of defendant railway company
in said city.   Before making this purchase,
appellant began negotiations with Mr. Dun-
lap, the traffic manager of appellee railway,
for the purpose of securing an agreement by
the railway company to extend a side track
which adjoined the lumber yard and deliver
all cars of lumber purchased by appellant
upon said side track.   The nature and result
of these negotiations are sufficiently shown
by the following letters:
    "Houston, Texas, June 13, 1914.
    "Mr. C. K. Dunlap, Traffic Manager. Sunset-
Central Lines, City—Dear Sir:  Referring to
our personal conversation regarding a side track
on your Blodgett line at the intersection of W.
Alabama Ave., beg to advise that we are now
negotiating with the property owners for the
block of ground now occupied by the Lumber
Supply Yard, at this point, conditioned that sat-
isfactory traffic arrangements can be made.
    "With reference to handling freight arriving
over other lines, beg to say that at no time will
there be more than 10 per cent. of the freight
consumed at this point arrive over other lines,
and that as a whole the writer believes that 1
per cent. would cover such items.
    "However, just at present, as stated to you,
we have about 20 or 25 cars bought that will
move to Houston over the I. & G. N. rails that
will have to be unloaded at that point, which,
during the time this is being handled, would
represent possibly 25 per cent. of the traffic.
    "With this exception, we are quite sure that
99 per cent. of the traffic can be handled over
your rails, the large per cent. of which would
be an exclusive haul.
    "We will be agreeable to bridge the ditch you
now have beside the track, and build all of our
own unloading facilities.   Also, do all necessary
grading work for the extension of the siding,
which will not be to exceed 150 feet.   The writ-
er understood from your conversation that this
would be a portion of the work which you would
require us to do.
    "It will be necessary for us to have an im-
mediate reply to this, as our negotiations with
the property owners will have to be brought
to a close Monday morning.
    "Your immediate attention will very much
oblige,   Yours very truly,
        "J. B. Farthing Lumber Company,
            "B. F. Greenwood, V-President."

                                    "June 24, 1914.
    "Messrs. Farthing Lumber Company, Houston,
Texas—Gentlemen:  With reference to your con-
versation with Mr. Dunlap:  It is understood
that the side track on our right of way near the
Montrose Lumber Company will be put in order
for use, and that we will deliver on that track
all freight consigned to you when it arrives
over the rails of any of the Sunset-Central
Lines; that is, the G. H. & S. A., T. & N. O.,
H. & T. C., or H. E. & W. T.   No cars received
at Houston via other lines from points outside
of the state of Texas will be delivered on this
track, and none from points in the state of Texas
except at a charge of $5.00 per car in addition
to the freight rate.
    "Yours truly,        J. R. Christian."

    Upon receipt of the letter last above cop-
ied, and relying upon the agreement therein
expressed, appellant claims that it purchased
the lumber yard, paying therefor the sum of
$20,000.   The appellee, after having its en-

gineer make a survey of the siding and adjacent tracks and streets, determined that it would not make the proposed extension and would not deliver cars upon said siding, and on June 27th informed appellant that the agreement theretofore made would not be complied with. In reply to this notification, appellant wrote the following letter:

"Houston, Texas, June 27, 1914.

"Mr. J. R. Christian, G. F. A., Sunset-Central Lines, City—Dear Sir: Referring to your letter of June 24th, No. 2002—32, confirming our agreement with Mr. Dunlap regarding the installation of unloading facilities on block 10, Lockhart-Connor-Barziza addition, beg to advise that we were to-day informed by Mr. I. A. Cottingham that a decision had been reached by the officials to the effect that we would not be supplied with unloading facilities at the point mentioned, as per our agreement with Mr. Dunlap.

"We have to-day written a letter to Mr. Cottingham, and for your information inclose herewith a copy of same, which fully sets out our position in the matter. For your further information, please be advised that we are now being forced to handle cars at that point, by team, from your unloading tracks at Blodgett, at an average expense of $20.00 per car, as compared with an average unloading expense of $5.00 per car when tracks shall have been arranged as per our agreement. We shall esteem it a great favor if you will kindly go into this matter in detail, and advise us at your very earliest convenience just what your attitude is, and what we may expect at your hands.

"Awaiting an immediate reply, we remain,

"Yours very truly,

"J. B. Farthing Lumber Company,
"B. F. Greenwood, V-President."

Appellee has persisted in its refusal to recognize said contract and to make delivery of cars of lumber upon said siding, and as a result thereof appellant has been put to the expense of hauling all of its lumber from a siding on appellee's road some distance from the lumber yard.

In December, 1914, appellant brought suit against appellee in the county court of Harris county for damages in the sum of $609.65, alleged to be the amount expended by it, up to the date of the filing of said suit, for drayage or hauling of lumber to appellant's lumber yard, and which it would not have been forced to expend but for the failure of appellee to comply with its contract to deliver the lumber upon the siding at appellant's yard. Appellee answered in said suit and joined issue with appellant, but the case has never been called for trial and still stands on the docket of said court. After the institution of the above-mentioned suit, the appellant instituted a suit against the appellee in the justice court of precinct No. 1 of Harris county, for the sum of $19.16, alleged to be expense incurred by appellee, subsequent to the filing of the previous suit, for hauling lumber to its yard from cars which appellee refused to deliver on the siding at appellant's yard in accordance with its said contract. The appellee answered in this suit, and a trial in the justice court resulted in a judgment in favor of appellant for the full amount claimed and all costs of suit. This judgment has been paid by appellee. Thereafter, on February 2, 1915, appellant filed suit against appellee for $18.79 in the justice court for said precinct No. 1, presided over by W. T. McDonald, and on April 8th, 10th, and 13th, filed suits in said court against appellee for $7.92, $10.20, and $8.75, respectively, and afterwards on May 16th, 18th, 19th, 25th, and 26th, respectively, filed suits in the justice court for said precinct, presided over by J. M. Ray, for the respective sums of $9, $13.34, $7.82, $8.50, and $10.55. Each of these suits is based upon an alleged breach of the contract for the extension of the siding at appellant's lumber yard, and the delivery of cars of lumber thereon.

Appellee's petition for injunction contains the following allegations:

"Plaintiff further alleged that said siding crossed West Alabama street, and that said street was a thoroughfare continually used by vehicles, and that the placing of cars on said siding would greatly obstruct the view of any approaching train to persons using said West Alabama street, and that the placing of cars on said siding was a menace to the safety of those using said street, and that for this reason, if there was an agreement between the parties, the same was void and unenforceable, as against public policy. Plaintiff further alleged that there was no consideration for the alleged agreement, and that the lumber company did not promise and bind itself to do anything in consideration of said agreement, and that the charge of $5 per car was the usual switching charge' charged for switching all cars that arrived in the city over any other than the lines of plaintiff and its associate lines, and that said charge is the uniform charge required by the railroad commission of Texas for the rendition of a same service, and is the same charge that is made for the placing of cars on this, as well as any other, switch track in the city of Houston, and that at the time said alleged agreement was made the railway company was receiving, and had always received, the same charge for switching cars to the team track, about 7½ blocks distant from the lumber yard. Plaintiff alleged that this contract was nudum pactum and unenforceable.

"Plaintiff further alleged: That, if the alleged agreement was a binding obligation, the same was completely repudiated and breached in its entirety, and that it had refused to put said track in condition, and refused to deliver any car upon said siding, and had completely repudiated said contract and notified the lumber company of such repudiation; that in cause No. 21422, in the justice court, between the parties, judgment had been rendered in favor of the lumber company, against the railway company, in the sum of $19.16 and costs of court; that said judgment had been rendered for damages for the breach of said alleged contract, and that the same had been fully paid and satisfied, and that said judgment was res adjudicata of the right of the lumber company to recover in all of said suits, and that the same was a bar to the institution of further suits growing out of said contract; that, because of the institution of these successive suits on the dates as set forth in said petition, the plaintiff believed, and upon such belief alleged, that it was the intention of the lumber company to institute a separate suit for the expense of hauling the lumber from each car that was consigned to it and not placed by the railway company on the siding adjacent to its lumber yard, as it contended the same should be done under its alleged contract with the railway company, and that these suits were in-

stituted for the purpose of harassing the railway company, and to thus force a compliance with the alleged contract, and that, if the lumber company had any cause of action for the breach of the alleged agreement, the same was one cause of action, and properly determinable in one suit, and that the lumber company was thus splitting up said alleged cause of action, and filing separate suits for the purpose of vexing and harassing this plaintiff.

"Plaintiff alleged that, unless the lumber company was restrained from instituting and prosecuting these separate suits, the plaintiff would be subjected to the vexation, expense, and trouble of defending these separate suits, when, in fact, all of the matters should properly be determined in one suit, and that plaintiff would be deprived of its right of an appeal and the determination of the issue as to the existence and construction of the alleged agreement by a court whose judgment would be reviewable by the appellate courts of the state, when in truth and in fact the amount in controversy was sufficient to confer appellate jurisdiction upon the highest court in the state, and that, unless the lumber company was restrained, this plaintiff would suffer great and irreparable loss, and that plaintiff has no adequate remedy at law.

"Plaintiff asked for a temporary writ of injunction, restraining the lumber company from further prosecuting the suits in the justice court, and from filing further separate suits growing out of the controversy as to the right of the lumber company to have cars of freight placed upon the siding adjacent to its lumber yard, and that upon a final hearing said injunction be made permanent or perpetual, or until such time as the case then pending in the county court might be tried and final judgment rendered, and for such other relief, both special and general, to which plaintiff might be entitled. This petition was duly sworn to as required by law."

[1] Conceding that the letter of June 13th from appellant to appellee's agent, and the letter of reply thereto of June 24th, which we have before set out, constituted a binding contract, the repudiation of such contract by appellee and its failure and refusal to perform any part thereof was a breach of the contract in its entirety, and the damages sustained by appellant because of such breach can and should be settled and recovered in one suit.

This being true, appellee was entitled to an injunction restraining the appellant from prosecuting the various suits filed by it in the justice court for recovery of damages for alleged separate breaches by appellee of said contract, and from bringing additional suits based upon the continued failure of appellee to comply with said contract.

The contract does not require the appellee to construct and maintain a side track or spur adjacent to appellant's lumber yard and deliver cars thereon for any definite length of time, nor does it bind appellant to maintain and operate its lumber yard for any length of time; but, from the nature of its subject-matter, it was plainly the intention of the parties that, if the appellant established its lumber yard adjacent to appellee's railway and had the lumber purchased by it shipped over appellee's lines, appellee would construct the siding and continue to make deliveries thereon as long as appellant continued to perform its contract obligation.

[2] The promise of appellant to establish its lumber yard adjacent to appellee's railway and to ship a large portion of the lumber purchased by it over the railway lines of appellee was the consideration for the promise of appellee to construct and maintain the spur or side track and deliver the lumber shipped to appellant on said track. These reciprocal promises furnished the one for the other sufficient consideration to support the contract. If, as claimed by appellant, it purchased the property and established its lumber yard in reliance upon the promise of appellee to construct the side track and deliver thereon all cars of lumber shipped to appellant, appellee should be held liable for the damages caused appellant by its failure to comply with its contract. But, appellee having repudiated its contract and notified appellant of that fact before the time for performance by it, such repudiation was a breach of the contract in its entirety, and appellant can in one suit recover all the damages sustained by reason of such breach. The rule that when one party to a contract breaches it the other party may at his option consider the contract at an end or may refuse to accept such breach as a termination of the contract and treat it as still in force for his benefit should not be applied in this case, because the only effect of permitting appellant to treat the contract as continuing would be to enable it to split up its cause of action and bring numerous suits when it could in one suit recover all the damages sustained by it.

The cases of Richmond v. Railway Co., 33 Iowa, 492, and Richmond & Jackson v. Railway, 40 Iowa, 264, cited by appellant in support of its contention that it was not required to treat the repudiation of the contract by appellee as a breach of the contract in its entirety, do not sustain such contention. In the cases cited, the contract, which by its terms was to continue in force for 15 years, was not breached in all of its provisions. The railway company from time to time breached certain provisions of the contract; but other of its provisions, which were beneficial to the plaintiff, were performed by the railroad, and plaintiff continued to perform all of his obligations under the contract. In such case, it is apparent that the plaintiff would be entitled to sue for damages for each separate breach of the contract as it occurred and was not required to treat the first breach of one of the provisions of the contract as an entire breach and recover in the suit brought for the first breach all damages that he might sustain by subsequent breaches of the contract. We think the facts of these cases distinguish them from the instant case.

The case of Howe v. Harding, 84 Tex. 74, 19 S. W. 363, also cited by appellant, does not sustain its contention. That case arose upon the following facts: The plaintiff Harding granted to a railroad company a right of way over his land in consideration of the agreement of the railway company to erect and maintain a water tank on plaintiff's land to be supplied from a spring on the land. The railway company was to use this water and pay appellee as much per month therefor as it might pay any other person on its line for like privilege. The company took possession of the right of way, erected the tank, and used the water from the spring as contemplated in the contract from July, 1885, to July, 1887, when defendant Howe, receiver for the railroad, removed the tank and ceased to use the spring and refused to make plaintiff any further payments. Plaintiff brought a suit and recovered the amount due him under the contract up to the date of the filing of the suit. He thereafter brought a second suit and recovered the amount due under the contract from the filing of the first suit up to the filing of the second. The court held that the judgment in the first suit was not res adjudicata of the cause of action set up in the second. The opinion upon this question is as follows:

"The facts show that the appellant is reaping the benefits of this contract by continuing the use and enjoyment of the right of way. This the railway company nor he has ever surrendered. The consideration for this right of way is the compensation agreed to be paid to appellee for the privilege and use of the water by the company. The failure of the appellant to use the water does not relieve him of his obligation to pay for the right of way so long as he continues to use it. This amount agreed upon as consideration for the right of way is a sum equal to that paid per month to any other person on the line of road engaged in furnishing water to the company. The evidence in this case shows that others for like service are receiving $50 per month. We do not think that the appellant in refusing to use the water and in removing the tank can escape its liability to pay this sum agreed upon so long as he enjoys the use of the right of way. If there had been a breach of the contract to the extent of abandoning not only the use of the water but also the right of way, then an action to recover the damages resulting from this entire breach would have been conclusive of the rights and liabilities of the parties in a second controversy. We do not think the judgment rendered in the former suit was res adjudicata."

We think it clear that this case does not sustain appellant's contention.

[3] The power of a court of equity to enjoin the bringing of separate suits to vex and harass a defendant by a multiplicity of actions, when plaintiff's demands can all be litigated in one suit, was recognized and exercised by our Supreme Court in the case of Railway Co. v. Dowe, 70 Tex. 5, 7 S. W. 368.

We think the trial judge was authorized to grant the temporary injunction, and his order granting same is affirmed.

Affirmed.

---

⊦=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes