GULF REFINING CO. v. BOREN et al.

No. 1025.

Court of Civil Appeals of Texas. Eastland.

May 12, 1932.

James E. Green, Jr., of Houston, and P. O. Settle and David W. Stephens, both of Fort Worth, for appellant.

J. M. Harris, of Snyder, for appellees.

LESLIE, J.

This appeal is from an order of the district court refusing to grant the Gulf Refining Company a temporary injunction restraining Hugh Boren and A. Johnston and R. H. Curnutte, Sr., and R. H. Curnutte, Jr., from the prosecution of a suit filed against it in the justice court of Scurry county, Tex., and from prosecuting and taking judgments against it in further suits which they threatened to institute in the justice or county court of Scurry county. The injunctive relief is sought upon the ground that said defendants are attempting to split up an inseverable cause of action into many suits, filing the same in said courts, and for such amounts that no appeal can be had to an appellate court.

In the justice court suit, Boren and Johnston recovered against the Curnuttes a judgment for $89.73, and the Curnuttes in turn recovered a judgment over against the Gulf Refining Company for the same amount. That judgment has been taken on appeal to the county court, where it stands for trial.

The suit in the justice court was filed by Boren and Johnston against the Gulf and the Curnuttes on an alleged oral contract between Boren and Johnston, Curnutte, Jr., and the Gulf Refining Company, by the terms of which oral contract Boren and Johnston were to improve certain property in Snyder, lease it for two years to the Gulf as a filling station for a cent per gallon rental for gasoline sold from the station, and which amount was to be paid direct to Boren and Johnston, and, in addition, the Gulf Refining Company was to engage Curnutte, Jr., to operate the station. It is alleged that, as a part of the oral agreement, Curnutte, Jr., was to rent from Boren and Johnston certain space adjacent to the filling station and pay them a rental of $70 per month for such additional space, and that the $70 per month was to be credited with an amount realized by Boren and Johnston from the Gulf Refining Company as rental for the filling station on the cent a gallon basis, not to exceed $50 per month. Boren and Johnston alleged in the justice court suit that the Gulf Refining Company, in violation of its verbal promise to them, as aforesaid, refused to deliver the possession of the station to Curnutte, Jr., and allow him to operate the same, and that he in turn has refused to pay the rental for the additional space, in accordance with his written contract with them. The $89.73 sued for represents the difference between the amount paid Boren and Johnston by the Gulf Refining Company on the cent a gallon basis and the sum of $70 for the months of August and September. In other words, if the gasoline sales netted Boren and Johnston $50 or more per month, Curnutte's obligation was to pay a balance of $20, thus insuring a rental of $70 per month to Boren and Johnston. Also, if such gasoline sales did not amount to as much as $50, the deficit was to be made good by Curnutte, Jr., whose contract was unconditional to pay the sum of $70.

This, in substance, indicates the theory on which Boren and Johnston, as well as Curnuttes, claimed liability against the Gulf in the justice court.

In the court below it appears that the testimony on the merits of the case was fully presented and acted upon by the trial court. The correctness of the judgment in refusing the relief prayed for will therefore be tested by the facts disclosed by the record. In substance, the facts are these:-

Boren and Johnston executed a written lease to the Gulf Refining Company for two years, whereby that company agreed to pay them as a consideration 1 cent per gallon on its gasoline sold from the station to be erected by Boren and Johnston on the leased premises. This written contract contained no agreement to place Curnutte, Jr., in the station, and it made no reference to any contract between Boren and Johnston and Curnutte, Jr., for the space adjoining the Gulf station and leased by them to Curnutte, Jr.

April 14, 1931, the Gulf Refining Company entered into a written "authorized dealers agency" contract with Curnutte, Jr., whereby it agreed to make him its commission agent at said station, with authority to sell its products on a commission basis. From such sales he was to make remittances to the company on the 10th day of each succeeding month. His commissions were based upon amounts sold. The agency agreement provided for the termination of the contract by either party. It did not limit in any manner the right of either party to terminate the agency agreement, and a specific stipulation is contained in the agreement denying the authority of any agent of the Gulf Refining Company to change, modify, or add to the written contract exacted by the company, or to make any other or further agreements in connection with the same. In accordance with the provision for terminating the lease contract, the Gulf Refining Company terminated the agreement with Curnutte, Jr., by giving him the specified notice in writing to that effect. This was done before he entered upon the operation of the station.

Later, on April 15, 1931, Boren and Johnston entered into a written contract with Curnutte, Jr., with Curnutte, Sr., as a guarantor. By its terms Curnutte, Jr., agreed to pay Boren and Johnston the sum of $1,680, in twenty-four monthly installments of $70 each for the additional space leased by them to him as a place on which to carry a stock of automobile accessories and maintain a washing and greasing rack.

The Gulf Refining Company alleges that it has a complete defense to any suit which Boren and Johnston and the Curnuttes claim to have by reason of the breach of said oral contract. It denies the existence of such agreement. It denies the authority of their agent, M. P. Hardy, to make such contract as alleged by the defendants, and further alleges that, if the same were in fact made, it would be unenforceable, being for a period of two years, and falling within the statute of frauds.

The Gulf Refining Company in this suit takes the further position that, if the alleged oral contract existed, and it were capable of being enforced against it, still neither the cause of action of Boren and Johnston nor of the Curnuttes could be split into numerous separate suits, since the cause of action in each case would be indivisible and could be enforced only in a single suit.

The suit in the instant case was filed by Boren and Johnston December 16, 1931. As stated, it is against the Curnuttes and the Gulf for $89.73, and for the months of August and September, 1931. This shortage arose in the manner hereinbefore indicated.

We now pass directly to a consideration of the controlling propositions on which this appeal is predicated. They are the sixth and seventh, and present the respective contentions that, if a cause of action existed in favor of Boren and Johnston, or in favor of the Curnuttes against the Gulf Refining Company, it was entire and indivisible in either instance, and the court erred in refusing to grant the temporary injunction against the prosecution of numerous suits on parts of the alleged cause of action.

After careful consideration, we reach the conclusion that, if Boren and Johnston have a cause of action against the Gulf Refining Company, it would not be on the rental contract between Boren and Johnston and Curnutte, Jr., but such cause of action is for damages resulting from the breach in its entirety of an alleged oral contract on the part of the Gulf to employ Curnutte, Jr., to operate its filling station in Snyder, Tex., for the specified period of two years. In substance, the same is true of the Curnuttes. If they have a cause of action against the Gulf, it is likewise for a breach by that company of an alleged contract to employ Curnutte, Jr., to operate the station. In other words, Boren and Johnston on the one hand, and Curnutte on the other, would either sue or implead respectively the Gulf for a breach of the same oral contract. The elements of damages might differ slightly in each case, but the amount in suit would be the same, the Curnuttes merely suing for a judgment over against the Gulf. Each of these suits and those threatened are and must be of the same nature and grow out of the same breach of an identical contract on the part of the Gulf. Such suit would necessarily be one for damages for the breach of a contract as contradistinguished from a suit on the contract. As we interpret the contract alleged, it is entire and indivisible, and the single breach of it cannot be split into numerous causes of action and separate suits based thereon from time to time. The damages for such breach can and should be settled and recovered in

one suit. J. B. Farthing Lumber Co. v. G. H. & S. A. Ry. Co. (Tex. Civ. App.) 178 S. W. 725; Stine Oil Co. v. English (Tex. Civ. App.) 185. S. W. 1009; Kempner v. Comer, 73 Tex. 196, 11 S. W. 194; 1st Tex. Jur. § 55, p. 672; 10 Tex. Jur., § 272, p. 469.

The opinion first cited deals specifically with the breach of an indivisible contract, and it was held that the appellee was entitled to an injunction restraining the appellant from prosecuting various suits filed in the justice court to recover damages for alleged separate breaches by the appellee of said contract, and from bringing additional suits based upon the continued failure of the appellee to comply with the contract.

As against the Curnuttes, the plaintiff's right to injunction is clear. It is elementary that, when a contract of employment is broken without fault of the employee, the latter has a cause of action, not for wages contracted for, but for damages for the breach of the contract. Southern Properties, Inc., v. Carpenter (Tex. Civ. App.) 300 S. W. 963; Litchenstein v. Brooks, 75 Tex. 196, 12 S. W. 975; Galveston, H. & S. A. Ry. Co. v. Eubanks (Tex. Civ. App.) 42 S. W.(2d) 475. On principle the same rule has application in the instant case.

The case first cited involved the breach of a one-year employment contract under which the employee had worked but a short time. His wages were payable semimonthly. The contract was held to be entire and indivisible, with the right of such employee to one recovery only on the breach of the contract. The court, in its opinion, quoted from our Supreme Court in Litchenstein v. Brooks, and from that opinion we also quote the following: "It is the duty of the injured party to find other employment if he can, and if ho succeeds the amount of his damages will be reduced by the amount earned in the new employment. When the contract is broken without fault of one party, his cause of action is not for the wages contracted for, but it is for the damages for the breach of the contract. His right to recover the loss occasioned by the breach, not exceeding the contract price, arises at once. In such cases as this the difficulty is not as to what the cause of action is, nor when the suit may be brought, but it is knowing the amount of his loss. It may be that such loss cannot, under the rule referred to, be ascertained before the end of the period contracted for, or other employment is secured. Still there is but one cause of action, and only one suit can be brought. That may be brought at any time before the cause of action is barred by the statute of limitations, either immediately or after the expiration of the time that the contract was made for. In either case no more damages can be recovered than have accrued at the trial. If it is not evident before the expiration of the contract period what the amount of damages really is, and the party is not willing to waive the unascertained portion, then the institution of his suit should be delayed until the whole loss is known."

The rule of avoidable consequences entering into such cases has an important bearing, not only upon the amount of recovery in an individual case, but also upon the nonadvisability of instituting a suit in such cases prior to the expiration of the contract period. The same reasons and equitable rules which limit the right of the Curnuttes to recovery from the Gulf to one suit apply with equal force to the alleged claims of Boren and Johnston against that company. In principle the same authorities may be relied on.

Under the facts of this case it is clear that the plaintiff is entitled to the relief sought. The power of a court of equity to enjoin the bringing of a multiplicity of separate suits to vex and harass the plaintiff, when the demands can all be litigated in one suit, is well recognized and exercised in this state. Galveston, H. & S. A. Ry. Co. v. Dowe, 70 Tex. 5, 7 S. W. 368, 369; Litchenstein v. Brooks, 75 Tex. 196, 12 S. W. 975; Malone v. U. S. F. & G. Co. (Tex. Civ. App.) 9 S.W.(2d) 461, par. 4.

In the case of Galveston, H. & S. A. Ry. Co. v. Dowe it is said that "the prevention of a multiplicity of suits is a favorite ground for the interposition of a court of equity." In that case an action was brought to enjoin the defendant from bringing separate suits on a large number of claims which he held against the plaintiff, which involved the same questions, and which fell within the jurisdiction of the justice of the peace. The petition set up facts showing complete defense to the claims. It was there held that, the amount in controversy in each claim being such as to preclude an appeal being taken from the justice court, injunctive relief would be granted, although in suits brought on similar demands judgment had been uniformly rendered against the plaintiff in the justice court. That opinion also holds that the same rule would apply to suits brought in a county court when so brought as to preclude appeal, and that injunction would lie to prevent the vexation, unnecessary expense, and trouble of defending many such separate suits.

We think greater reasons exist for the exercise of such power by a court of equity in a case like the instant one, which involves the breach of an indivisible contract, and it is sought to split the same into numerous causes of action and sue thereon from time to time. Farthing Lumber Co. v. G., H. & S. A. Ry. Co. (Tex. Civ. App.) 178 S. W. 725, and authorities above cited.

In passing upon the plaintiff's right to the relief sought, another fact with a material bearing on the merits of this case is found in the record. It appears that, on the 6th day of November, 1931, Boren and Johnston recov-

ered against the Curnuttes a judgment for the sum of $79.03, that being the amount of rent in default for June and July, 1931, and that at the same time the Curnuttes took judgment against the Gulf Refining Company for the same sum. That judgment has evidently become final, and that suit has been followed by the one here sought to be enjoined, which is against the Curnuttes and the Gulf, for $89.73, the amount of rent alleged to be due for the following months of August and September, 1931, and for which amount Curnuttes seek a judgment against the Gulf as in the first suit. In this state of the record we question, without deciding, whether the Curnuttes, at this time, have any other or further cause of action against the Gulf Refining Company. The judgment for $79.03 may well be regarded as a bar to the recovery of any other sum or sums based upon the breach of the contract alleged. In support of such a conclusion we cite Southern Properties, Inc., v. Carpenter, supra; Litchenstein v. Brooks, supra; Tarbox v. Hartenstein, 4 Baxt. (Tenn.) 78, cited and discussed by our Supreme Court in the opinion in Galveston, H. & S. A. Railway Co. v. Dowe, supra.

The rule announced in these authorities would have special application to the claims of Curnutte in the suit for August and September rent, and in such threatened suits.

In what has hereinbefore been said and held, we have dealt with the alleged oral contract, or "verbal" promises and understandings set out by Boren and Johnston on the one hand, and the Curnuttes on the other, whereby they seek to recover certain sums from the Gulf Refining Company in the suits instituted in the county and justice courts of Scurry county. We have not so far endeavored to determine the rights of the litigants under the terms of the three written contracts mentioned in the early part of this opinion. However, in view of another trial, and considering only the facts as reflected by the testimony in this case, which may be different on the final trial, this court expresses the view that the record before us conclusively evidences that the negotiations of the parties in this three-cornered lawsuit culminated in the three written contracts which appear to be in all their terms clear and unambiguous, and, so far as the record shows, free from any suggestions of fraud, accident, or mistake.

In another respect the testimony seems to be conclusive and to the effect that M. P. Hardy, the agent of the Gulf Refining Company, in negotiating the three contracts, and who is charged with entering into the "oral contract," had no authority whatever to make such oral contract further than to negotiate the same with the other interested parties, witness them, and then submit same for approval of the company, whose higher officials alone could and did make the contracts

binding. In this connection, and aside from Hardy's denial of such authority, it will be observed that the written contract stipulated against any authority in the agent to change, modify, or add to the company's required written contracts. So far as concerns the validity of the "oral contract" under such circumstances, attention is directed to the opinion in Missouri State Life Ins. Co. v. Boles (Tex. Civ. App.) 288 S. W. 271, and Lane v. Sullivan (Tex. Civ. App.) 286 S. W. 541; Ford Motor Co. v. Maddox (Tex. Civ. App.) 3 S.W.(2d) 911; Id. (Tex. Com. App.) 23 S.W.(2d) 333.

Further, the alleged oral contract must necessarily be tested by the statute of frauds. The written contract between Boren and Johnston and the Gulf was for two years. It is silent as to the employment of Curnutte, but, according to the allegations pertaining to an alleged oral contract between Boren and Johnston, or Curnutte and the Gulf, it is asserted that a verbal agreement to let Curnutte, Jr., operate the station was a part of the consideration for the improvement of the property for filling station purposes and the execution of a lease thereon to the Gulf. Such an undertaking as alleged extended over a two-year period and related to a lease on real estate, and as such the contract necessarily falls within the statute of frauds. Article 3995, subds. 4 and 5, R. S. 1925.

In the study of the record before us, it clearly appears that neither Boren and Johnston nor Curnutte base any right to recovery against the Gulf on the specific written contracts. The written contract between Boren and Johnston and the Curnuttes will now be noticed, but that contract is deemed to have no material bearing on the issues of this case which springs from the terms of the alleged contract. As between these parties, Boren and Johnston have the unconditional rental contract of the Curnuttes, providing for the payment of the rent at the rate of $70 per month. Default in meeting that obligation as the monthly rentals fall due subjects the Curnuttes to a suit on each default, and the rule which forbids the splitting of a cause of action has no application. A distinct cause of action arises when each installment falls due. Racke v. Anheuser-Busch, 17 Tex. Civ. App. 167, 42 S. W. 774; Neal Commission Co. v. Radford (Tex. Civ. App.) 197 S. W. 1052; Williams v. Houston Cornice Works, 46 Tex. Civ. App. 70, 101 S. W. 839, 1195; Davidson v. Hirsch, 45 Tex. Civ. App. 631, 101 S. W. 269; 1st Tex. Jur., § 55, p. 672.

As between the Curnuttes and the Gulf Refining Company, no such written contract exists as that which Boren and Johnston hold against the Curnuttes. The written contract between the Curnuttes and the Gulf is fundamentally different from the one just con-

sidered. One essential difference is that the Curnutte-Gulf contract provides that, upon giving written notice to that effect, either party may terminate the contract at will, and no provision is made therein or in the Boren-Johnston-Curnutte contract, whereby Curnutte could be relieved of his obligation to Boren and Johnston in the event he lost the benefits of his contract with the Gulf. In the light of subsequent events, this was an improvident contract for Curnuttes to execute, but the provisions thereof are not against public policy, and no reason is perceived why the parties should not make the same, if they desired to do so.

The above observations deal with matters suggested by the first five propositions, but they are more or less collateral to the controlling issues in this case which have been decided in the earlier part of the opinion. These remarks are made in view of a final trial, and in the interest of economy in litigation.

It follows that the judgment of the trial court is reversed, and the judge of that court is directed to enter an order restraining Hugh Boren and A. Johnston and R. H. Curnutte, Sr., and R. H. Curnutte, Jr., temporarily (until this cause may be tried on its merits) from filing any suits or taking judgments in any suits now or hereafter filed in the justice or county courts of Texas involving their alleged cause of action against the Gulf Refining Company growing out of the leasing by Boren and Johnston and Curnutte, Jr., of the space adjacent to the filling station leased by the Gulf Refining Company from Boren and Johnston in Snyder, Tex.

It is so ordered.