# SUPREME COURT

OF THE

STATE OF IOWA

AT

DES MOINES.

---

BENNIE P. HANSEN, Appellant, v. HALL MANUFACTURING COMPANY, Appellee.

SPECIFIC PERFORMANCE: Patent. One who contracts to manufacture a patented article and to pay a royalty for such privilege, and receives an assignment of a patent, in order to be protected in such manufacture, and thereafter wrongfully breaches his contract, is manifestly under obligation to reconvey the patent to the actual owner.

*Appeal from Linn District Court.*—MILO P. SMITH, Judge.

MAY 8, 1923.

ACTION in equity, to enforce specific performance of an alleged agreement for the assignment or transfer of certain

patents.   Decree dismissing petition, and plaintiff appeals.—
*Reversed.*

*George C. Claason* and *P. A. Bronson,* for appellant.

*Barnes, Chamberlain, Hanzlik & Thompson* and *E. E. Reed,*
for appellee.

WEAVER, J.—The plaintiff, with one Grenard, claiming to
hold letters patent from the United States for the manufacture
and sale of an improvement in wagon tongues, entered into a
contract with the defendant, Hall & Company, whereby the lat-
ter, in consideration of certain agreed royalties, was to acquire
the exclusive right to manufacture and sell said tongues, and also
to purchase and take over all the stock or material then held
by said assignors which was capable of being used in such manu-
facture.   Under this contract, Hall & Company began the manu-
facture and sale of the tongues, and paid certain amounts of
royalty thereunder, when it objected to further performance,
on the ground that plaintiff's patent or patents afforded it no
protection, being an infringement upon certain other prior pat-
ents, owned and held by one C. J. Bolte.   To remove this
obstacle, plaintiff, by agreement with Hall, sought out Bolte, and
obtained from him an assignment of the alleged prior patents,
the assignments being made direct to Hall & Company.   It is
the plaintiff's claim that the purchase was made by him for
$400, together with some other incidental expenses, and that,
since he did not have the money to make said payment, except
in small part, Hall & Company furnished $395 for that purpose,
under an agreement that reimbursement should be made in the
form of a credit as for payment upon royalties thereafter accru-
ing.   After this settlement with Bolte and the transfer of the
legal title to the Bolte patents to Hall & Company, the latter
served notice on the plaintiff of the annulment and cancella-
tion of the royalty contract, stating as the reason therefor that
plaintiff had failed and neglected "to assign and transfer to
the Hall Manufacturing Company the exclusive right to manu-
facture and sell under said patents and under patents claimed
to have been granted by the government of the United States

to you since the execution of said contract." Since that time, the defendant denies all obligation to pay royalty under said contract, and asserts full and exclusive ownership in itself of all the rights and privileges conferred by the Bolte patents.

Without extension of this opinion to include particular statement of all the many pleadings and amendments found in the abstract, the essence of the controversy now before us is substantially as follows: The plaintiff alleges that the assignment of the Bolte patents was taken by him in the name of the defendants, solely to secure and protect the latter in the enjoyment of the rights conferred upon it by the royalty contract and the patents therein mentioned; that, while the legal title to said Bolte patents is in Hall & Company, the equitable ownership is in himself; and that, since said defendant has assumed to cancel and refuse to perform the royalty contract, its authority to retain or assert any right to said patents is thereby terminated, and plaintiff is entitled to have the defendant's possession thereof adjudged to be in trust only, and that he be invested with the legal title thereto.

Defendant denies that it received said assignment in trust, or that plaintiff has any right or interest therein.

In our judgment, the record clearly sustains the claim asserted by the plaintiff. To go back to the original contract, it is to be said that it does not provide for an assignment of the plaintiff's patents to defendant, but it does grant to defendant the exclusive right to manufacture and sell the described articles during the life of the patents, subject to the specified conditions. Under this agreement, plaintiff was bound to protect defendant in the possession and enjoyment of the right conferred. It appears that the manufacture and sale under that right assumed profitable proportions, and the question whether Bolte had any conflicting prior right became a subject of importance. Naturally, with the possibility existing of trouble from that source, defendant looked to plaintiff to prevent it. Plaintiff testifies unequivocally that Hall broached the matter, saying that "it was up to him" (plaintiff) to take care of it, and advising him to go to Bolte and purchase his patent. Plaintiff undertook to do this, and was about to borrow the money needed for that purpose, when Hall proposed or offered to ad-

vance what was needed for that purpose and charge it against the accruing royalties. This was done, and plaintiff went to Bolte, obtained the assignment in defendant's name, made a small payment in advance, and Hall advanced the remainder, $395. Thereafter, in making up a statement for the next quarterly accounting for royalties, the defendant did charge against them and take credit for said advancement of $395. As a witness, Hall says:

"I sent Mr. Hansen to Columbus to buy the patent for us. * * * We sent a draft to the bank at Columbus to be turned over to Bolte when the patent assignment was made out to us. * * * We had no agreement or arrangement with Hansen or Grenard that this Bolte patent was to be taken in trust for them."

This denial may be literally true; but even though there was no mention, in terms, of a "trust," the law implies a trust if it be true that the purchase was made pursuant to an understanding between them that plaintiff should buy the patent; that defendant would advance the money to him for that purpose; and that the advancement was to be repaid by him out of the royalties accruing on the contract. On cross-examination, Hall, with evident reluctance, was compelled to admit that the purchase price of these patents was charged back to plaintiff, in accounting for royalties. Such being the case, it would be highly inequitable to permit the defendant, while refusing to perform its original contract, to assert ownership in its own right to the Bolte patents, in which it has never invested a dollar which has not been accounted for and returned. So far as appears, no person or party has ever asserted any right or intention to contest the validity of defendant's claim to the exclusive right given to it by the original contract. Defendant has enjoyed the undisturbed possession of the right so acquired, and, so far as appears in the record, may still be exercising it and reaping the resultant profit, undiminished by any payments of the agreed royalty, thus demonstrating the unreliability of the familiar saying that one "cannot eat his cake and keep it too."

Counsel for appellee seek to break the force of Hall's admission upon the theory that Hall & Company had become

liable to a claim for damages by Bolte by reason of infringe-
ment of his patents, and that these patents were assigned to
defendant in the nature of indemnity against such liability.
No witness so testifies. In Hall's examination as a witness, his
counsel ingeniously framed that theory in the form of a ques-
tion, and asked him to state "whether or not" it was true. The
witness side-stepped the suggestion, and made an entirely irrele-
vant answer. Moreover, the record is entirely devoid of any
showing that Bolte ever made any complaint of that kind
against the defendant, or that any such liability ever existed.

Something has been said in argument to the effect that none
of the patents, including those taken out by Bolte, is of any
value. That, we think, is not a material inquiry, and we do
not care to go into it.

If defendant proposes to repudiate its contract, it can do
no less than to restore to plaintiff that which it has received
from him in consideration of the agreement which it refuses
to perform.

The decree below will be reversed, and a new decree will
be entered, adjudging the plaintiff to be the owner of the Bolte
patents, and requiring defendant to execute and deliver to
him a good and sufficient assignment thereof.

Another phase of this litigation was before us in *Hanson
v. Hall Mfg. Co.*, 184 Iowa 1091, a reading of the opinion in
which will perhaps render easier a full comprehension of the
merits of the issue here considered. We omitted to state at the
proper place that Grenard, whose name is associated with plain-
tiff's in the original contract, is now deceased, and plaintiff is
the sole party entitled to maintain the action.

For the reasons stated in the foregoing opinion, the decree
of the district court is reversed. If plaintiff so elects, decree
granting him the relief prayed for will be entered in this court.
—*Reversed.*

PRESTON, C. J., STEVENS and DE GRAFF, JJ., concur.