L. E. HUESTON, Appellee, v. POINTER BREWING COMPANY, Appellant.

No. 43539.

NOVEMBER 17, 1936.

Walter G. Samuels and Miller & Claussen, for appellant.

John Denison and Carl Bogenrief, for appellee.

ALBERT, J.—To a fair understanding of the questions raised herein, the following facts are admitted or uncontradictorily proven.

On the 5th of February, 1934, a contract was made between the plaintiff and the defendant by which the plaintiff was to act as salesman for the defendant. The terms of said contract, as related by the plaintiff, were that he was to be paid $110 per month, plus pay for gasoline and upkeep of his car. He worked six or eight weeks under this contract in Des Moines, and then was ordered to carry on his work at Cedar Rapids, and later in other parts of this and other states. He worked until the 17th of November, 1934, when he was discharged. He made monthly statements to the company, on which he was paid, and at the time of his discharge he certified such monthly statement and was paid in accordance with its terms. At the bottom of each monthly statement was the following:

"I hereby certify that all expenses and obligations incurred by me in company business prior to and including the last date shown on this account has been paid, and I have been reimbursed by the company for all such expense except those appearing on this account."

These certificates contained no charge or item for the "use of the car".

It is obvious under this record that the original contract between the parties covered the use of the car. The claim of the plaintiff sued on herein is for a separate item for the "use of the car".

Among other things pleaded by the plaintiff in his petition is that "after March 15, 1934, the plaintiff was directed by the defendant to work within the state of Iowa, and outside the city

of Des Moines, at which time he demanded of the defendant another and different arrangement touching the use of his car, and the defendant promised to work out another basis of compensation for the plaintiff and directed him to work until such an arrangement could be worked out. The plaintiff repeatedly thereafter requested the defendant to arrange for additional compensation for the use of his car, but the defendant as often put the plaintiff off with a promise to work out some program. Wherefore the plaintiff says that there arose an implied contract on the part of the defendant made to the plaintiff to pay him his same salary which was done, and additional compensation for the use of his car in driving about the state of Iowa outside the city of Des Moines; but the defendant, though repeatedly requested so to do, has failed, neglected, and refused to pay the plaintiff.''

After having read the evidence, and especially the testimony of the plaintiff, we reach the conclusion that the allegations heretofore set out in the petition were not sustained. Under the plaintiff's own testimony there was no talk about the questions-involved prior to or at the time the plaintiff went to Cedar Rapids. Whatever talk occurred between them occurred some three weeks after he had gone there.

The plaintiff testified to a talk with Lesher, one of the officers of the company, about car mileage, ''if any of the fellows was getting it, and he says, 'We will take care of you on that,' and from time to time it was the same thing, when I would come in he would say, 'Well, I have got to see Mr. Anderson (the president of the company) about it. We will frame something out for it that will take care of you.' He said he hadn't got to see Mr. Anderson. 'We will figure out something in it for you in the way of car expenses,' because every time something happened to the car he (Lesher) would say, 'Your car is costing a lot of money.' I said, 'Give me an allowance and I will pay my own repair bills and gasoline.' So at one time I went around this town for I think a day and a half looking at panel jobs. Lesher said to see what the prices were and let him know and he would buy a panel job or give me a car, and so far as that is concerned, my wife was right in the office in the afternoon; that is the last heard of it, always going to get it, never got it. I raised the question time and time again.

''Q. Put you always off? A. At the same time I wanted,

or quit, I still had to work, I needed a job. I didn't want to buy a car out of—what would I buy another one with? I didn't include five cents a mile in my reports to the company because he (Lesher) had not authorized it as yet, and he promised he would figure out something for the use of the automobile. All he did was promise.

"Q. What did you understand by that? A. I took his word, I was working for him. I attempted to get use for my automobile as other salesmen did. I made request that I wanted car mileage, I wanted it to pay my own car, so I could buy a car. I got my salary twice a month and my expense check weekly. I got $480.49 for gasoline, oil, and repair bills. I was well satisfied with the pay I was getting. All I wanted was my car taken care of. I didn't feel I should take it out of my pay, taken from the family to live, what I used for the company to drive on. They promised to take care of it, 'As soon as I see Mr. Anderson we will figure out something.' The same thing at Clinton, they would say 'When Mr. Lesher okay's it we will take care of it, you see him in Des Moines.' "

The plaintiff's wife testifies that in August, 1934, "My husband told Mr. Lesher he could not afford to drive his car on what he was getting. Mr. Lesher says, 'We will get you a car or we will take care of the other matter.' "

The foregoing constitutes the substance of all the plaintiff's testimony.

It is apparent from this testimony of the plaintiff that he was attempting to take from the original contract the use of the car and treat it as a separate item, and recover on it as such. We think that under the plaintiff's own testimony there is a failure to show that there was any mutual meeting of the minds on any definite modification of the original contract.

It is to be remembered at this point that under the original contract made the compensation therein provided covered the use of the car, and during all the time the plaintiff worked, and as shown by the last receipt given by him, the compensation that was paid included "the use of the car". In order to modify the original contract, the new agreement must have all the requisites of a valid and enforceable agreement or it will not be binding. While no particular form is required, mere indefinite expressions cannot constitute a modification, nor can mere negoti-

ations for a variance in the terms of the contract. The question of modification depends primarily on the intention of the parties. 13 Corpus Juris, p. 590, sec. 605. In addition to this, "One party to a contract cannot alter its terms without the assent of the other; the minds of the parties must meet as to the proposed modification." 13 Corpus Juris, p. 591, sec. 606.

Summing this whole matter up, the plaintiff during all the time he worked was receiving compensation for the use of his car. Talk was had about separating this item from the original contract, and attempting to make special compensation therefor. The most that can be said of the plaintiff's testimony is that nowhere in the testimony is there any showing that there was a mutual meeting of the minds in relation thereto. All that in reality occurred was a promise on the part of the defendant that at some time in the future new arrangements would be made in relation thereto.

Plaintiff relies largely, if not wholly, on the case of McGuire v. Interurban R. Co., 199 Iowa 203, 200 N. W. 55. About all the discussion in that case on the question here involved is adverse to the plaintiff. The case was finally ruled on the proposition that the plaintiff had offered to prove that there was a general custom to pay, in addition to the regular compensation, for work in excess of a given number of hours per day, or on Sundays or on holidays. The case holds that by reason of this plea and offered proof which was rejected by the lower court, the case was reversed on that ground alone. There is nothing in the case that in any way will give comfort to the plaintiff's claim in this case.

Reliance is also placed on the case of Keister v. Mitchellville Telephone Co., 180 N. W. 754. This case is distinguishable on the ground that in that case the charge claimed was for the use of a team in the service of the defendant. The contract that existed in that case, the court held, was a contract for personal services of the claimant; whereas in the case at bar no such condition exists and the contract as originally made covered the use of the car. It is our conclusion, therefore, that the evidence introduced on behalf of the plaintiff was not sufficient to show a modification of the original contract, as heretofore explained.

2. Attack is made on the instructions given in the case. We will not stop to set them out, but suffice it to say that the instructions did not respond to the pleadings made in the case,

and more, they did not respond to the plaintiff's theory of the case. Lastly, the defendant pleaded a full satisfaction of the claim of the plaintiff, and this is wholly ignored in the instructions.

The defendant pleaded a counterclaim consisting of two items which have been duly assigned to the defendant, amounting to $47.23. On the trial of the case the plaintiff admitted liability on this counterclaim to the amount of $40.08. It is our conclusion that the motion of the defendant for a directed verdict at the end of all the evidence should have been sustained, and the defendant should have had judgment against the plaintiff for the admitted items of the counterclaim.

For these reasons the case is reversed.—Reversed.

PARSONS, C. J., and DONEGAN, ANDERSON, KINTZINGER, RICHARDS, and STIGER, JJ., concur.