HAROLD L. SHRIVER et ux., appellants, v. L. W. COOK et ux., appellees.

No. 51277.

(Reported in 127 N.W.2d 102)

272

MARCH 10, 1964.

Bray, McCoy & Faulkner, of Oskaloosa, for appellants.

Gilbert & Stoddard, of Oskaloosa, for appellees.

THOMPSON, J.— A contract to make a contract is a contract. Some misunderstanding of or disagreement with this principle by the defendants brought about the present litigation.

The plaintiffs in the action before us are husband and wife, as are the defendants. The questions involved are largely concerned with the applicable law. There is not much dispute in the material facts, as we view the case, although it is true different inferences might be drawn from some of them. However, these inferences were resolved by the jury in favor of the plaintiffs, and we are therefore concerned with the factual situation only as it bears upon the legal propositions presented.

The case as made by the plaintiffs' petition, which is in two counts, is this: On or about September 1, 1961, they entered into an oral agreement with the defendants to purchase, remodel and furnish a building and operate therein a supper club in Montezuma. The defendants were to furnish funds for the purchase of the property and for the expense of remodeling and furnishing. Plaintiffs were to assist in the work of remodeling and preparing the building for its intended use, and when the business of operating the supper club was under way they were to operate the kitchen and assist in maintaining the place. When the business operation commenced they were to be paid $375 per month for their services, plus living quarters, food and laundry. It was also pleaded that when the expense of purchasing the building, remodeling and furnishing had been repaid to the defendants from the operation of the business, the plaintiffs were to become the owners of one half of the real estate and of the business.

A further allegation, which is of prime importance in the case, is that "said agreement was to be reduced to writing upon the commencement of the operation of the supper club." It is further alleged that plaintiffs fully performed the agreement and upon the opening of the supper club for business on December 9, 1961, they requested the defendants to execute the written agreement, but the defendants refused so to do, and that defendants committed acts which made it impossible for plaintiffs to perform the contract. The petition, in Count I, then claims damages for the reasonable value of the services of each of the plaintiffs in remodeling the building and preparing for the opening of the eating place, from September 15 to December 9, 1961.

Count II contains similar allegations as to the contract and its breach, and asks as damages compensation for the services of the plaintiffs' minor son, William Shriver, during the same period. It is claimed in this count that the defendants, as a part of the oral contract, agreed to employ William Shriver after the opening of the club at a salary of $35 per week, plus room, board and laundry but their breach made it impossible to carry out the contract as to William Shriver also, and plaintiffs are entitled to compensation for his services in remodeling and preparation for opening the club.

The defendants answered, denying generally, and filed a counterclaim. Judgment for defendants was entered on the counterclaim by direction of the court, and no appeal is taken from this by the plaintiffs.

The defendants moved for a peremptory verdict on plaintiffs' claims at the close of the plaintiffs' evidence and again at the close of the entire case. These motions were denied, the matter was submitted to a jury, and verdicts in favor of the plaintiffs were returned on each count of their petition. Thereupon the defendants filed their motion for judgment notwithstanding verdict. The trial court granted this motion, set aside the judgments for the plaintiffs which had been entered on the verdicts, and entered judgment for the defendants on each count of the petition. It is from this ruling and the judgment entered thereon that the plaintiffs now appeal.

I. The eating place had been in operation for a short time only when the previous harmonious relations between the parties ended in discord. The plaintiffs ceased to render services on January 25, 1962, and moved from their living quarters in the building on February 4 next. They contend this was because of certain breaches of the oral contract by the defendants which justified them in refusing to further perform. This brings up the first question for consideration: were there such breaches, or any breach, which excused plaintiffs' termination of the contract?

While the plaintiffs attempted to prove certain interferences with and criticisms of their work by defendant Mary Cook, we need not decide the sufficiency of these to effectuate a breach

by the defendants. It is to be remembered that one part of the oral contract, as pleaded by the plaintiffs and shown by their evidence, was that when the remodeling of the building had been completed and the club commenced operation, the contract would be reduced to writing. That is, the oral contract provided for a written contract. This was a material and important part of the agreement. We must assume the jury found with the plaintiffs as to proof of the contract at this point. The plaintiffs were to become the owners of a one-half interest in the business when the costs of the remodeling and preparations for operation had been repaid to the defendants from the operation of the business. These costs were substantial, and without doubt it would require a profitable operation over a considerable period of time to return them. The plaintiffs had bargained for a written contract to protect them during this period; and this was important to them. The value of a written agreement instead of an oral one in any transaction is too apparent to need elaboration. An oral contract may be denied, or evaded, or misconstrued, or forgotten in toto or in some substantial part; when it is reduced to writing it speaks in terms that cannot be refuted.

But defendant L. W. Cook, although admitting the agreement for a written contract substantially as the plaintiffs claimed, testified that he had refused to perform it. He said: "I told Jeannette Shriver I was not going to make any written agreement. Later the same night I told Harold Shriver I wouldn't make any written agreement at that time. He asked me a time or two after that. I wasn't in any hurry to make an agreement. We hadn't had the Party House paid off yet. In my deposition I testified that the written agreement was to be entered into when the supper club began operating. That was the agreement. I didn't renege on the contract I just reneged on the time."

The distinction between "reneging" on the contract and on one of its most important parts, as drawn by the defendants, does not appeal to us. The plaintiffs were justified in refusing to go further with their performance, under Doctor Cook's own testimony.

II. We come then to the decisive question in the case, which in effect is whether the plaintiffs were entitled to sue

for the measure of damages they asked. It is the defendants' theory, which was apparently adopted by the trial court in granting their motion for judgment notwithstanding, that if there was a breach of the contract the plaintiffs were not entitled to recover for the value of their services in remodeling and preparing for operation, but were bound to plead and prove the value of what they lost; that is, what their contract would have been worth to them if it had been fully performed. This, of course, would have been an impossible measure of damages to prove. They were to become the owners of a one-half interest in the business when, and if, the profits were sufficient to repay the investment of the defendants. No one could say whether this would ever occur.

In this connection, the defendants insist that there was no agreement that the plaintiffs were to be paid for their services rendered in remodeling and other preparations for the commencement of operation of the business; that these services, by the plain terms of the contract, were to be rendered without compensation. They are in error. The plaintiffs were not to be paid at the time the services were rendered, but they furnished their labor and efforts in reliance upon the entire contract, and with the expectation they would in the end be paid by obtaining a one-half interest in the business.

The defendants raised their contention, which amounts to a claim of an improper and illegal measure of damages, in various ways; directly, and by a claim that there was a fatal variance between the pleading and proof. We are unable to agree that there is merit in their position, however asserted.

Scott v. Wilson, 185 Iowa 464, 469 to 471 inc., 170 N.W. 761, 763, deals with an identical factual situation. The plaintiff had been employed by the defendant as a household servant, under an agreement that she should have a home for her lifetime and would be taken care of in the event of defendant's death. The petition alleged that the plaintiff performed these services for 23 years, when the defendant canceled the agreement and ordered the plaintiff from her home. The prayer was for the value of the services rendered during the 23 years they were

performed. A demurrer to the petition was sustained, but this court reversed, holding that a cause of action was stated.

In Murphy v. Williamson, 180 Iowa 291, 163 N.W. 211, there was shown an agreement that the defendant and his wife and minor son were to be employed by the plaintiff for ten years, at $20 per month during that time, with an additional $20 per month to be paid at the end of the period, with interest, and a further sum of $500 at the same time. The plaintiff was to provide a home for the family and pay all their living expenses except for clothing, and the son was to have certain school privileges. The defendant, being of the opinion the plaintiff had breached the contract, quit the employment at the end of less than ten months. The plaintiff sued for breach of the contract; the defendant counterclaimed for the value of services rendered during the time he and his family were on the plaintiff's farm, employed under the contract. The jury rendered its verdict for the defendant on his counterclaim, and the plaintiff appealed to this court.

We held that the contract was entire, and affirmed the judgment of the trial court. We said: "The benefits to accrue to the defendant could not be apportioned by any mathematical process. If they were apportioned at all, evidence would have to be taken on the question of the value of home privileges and the expense attendant thereon. This would be an uncertain field. We think, therefore, that the contract should be deemed an entirety. The defendant having been deprived of its benefits by the wrongful acts of the plaintiff, he should not be prevented thereby from showing the fair market value of the services rendered. Testimony in support of such measure of recovery could be much more intelligent and satisfactory and definite than any testimony could be which would attempt to measure the value of home and school privileges." Loc. cit. 180 Iowa 299, 163 N.W. 213.

To the same effect is Ottoway v. Milroy, 144 Iowa 631, 123 N.W. 467. In Hansen v. Hall Mfg. Co., 196 Iowa 1, 5, 193 N.W. 568, 570, we said: "If defendant proposes to repudiate its contract, it can do no less than to restore to plaintiff that which it has received from him in consideration of the agreement

which it refuses to perform." We quoted this with approval in The Maytag Co. v. Alward, 253 Iowa 455, 465, 112 N.W.2d 654, 659.

■■ In fact, although the exact term is not used, what the plaintiffs here are asking is restitution. Their petition, and their proof, make a clear case of a right to such relief. It is true their services rendered in preparing the property for use as a supper club cannot be restored to them; labor, once performed, is not subject to restitution in kind. But its value may be returned. This is what the plaintiffs ask. A party injured by a breach of a contract has three possible remedies: he may ask damages under the terms of the contract, he may disaffirm the contract and ask for the value of his own performance, or he may, in some cases, ask specific performance. We are not concerned with the last named remedy here. We think the plaintiffs clearly disaffirmed the contract and asked for the value of their services rendered in performing it, to the point where it was breached by the defendants. It was not necessary that they use the specific word "restitution" if the facts they pleaded and proved entitled them to that remedy. "Restitution" and "value of performance" are, so far as this case is concerned, at least, identical terms. There is a considerable discussion of the question in Mobley v. Boyt Farms Co., 256 Iowa 106, 126 N.W.2d 280.

■ III. The defendants contend that there is no showing of the value of plaintiffs' services. The plaintiffs testified as to this; and the general rule is that one who performs services is competent to testify to their value. 32 C. J. S., Evidence, section 545, page 323. The defendants offered no contradictory evidence on the point. There was a jury question.

■ IV. It is also claimed there is no showing the services benefited the defendants. The basis for this is not easy to understand. The plaintiffs did a considerable amount of labor in remodeling the property; they did it in accordance with their contract; and the desired result, the opening of the supper club was secured. That the final event or venture proved unprofitable for the defendants does not prove lack of legal benefit to them.

V. Other points made in the motions for directed verdict

and so embodied in the motion for judgment notwithstanding have been examined and found to be without merit.

The judgment of the trial court is reversed and the cause is remanded with directions to reinstate the judgments entered on the jury verdicts.—Reversed and remanded, with directions.

All JUSTICES concur.