DAVENPORT OSTEOPATHIC HOSPITAL ASSOCIATION, appellant, cross-appellee, v. HOSPITAL SERVICE, INCORPORATED, appellee, cross-appellant.

No. 52620.

(Reported in 154 N.W.2d 153)

250

NOVEMBER 14, 1967.

Betty, Neuman, McMahon, Hellstrom & Bittner, by R. Richard Bittner and Ronald L. Saylor, of Davenport, for appellant, cross-appellee.

Gamble, Riepe, Martin & Webster, by J. G. Fletcher, of Des Moines, and Cook, Blair, Balluff & Nagle, by David J. Sohr, of Davenport, for appellee, cross-appellant.

RAWLINGS, J.—The facts in this case, though somewhat involved, are without substantial dispute.

December 1950, these parties entered into a written contract. Accordingly Hospital agreed to furnish services to Blue Cross subscribers, which in turn agreed to pay Hospital. It contained a ten-day cancellation provision exercisable by either party.

Payments by Blue Cross to Hospital were to be in accord with a stated reimbursement cost formula.

Briefly stated Hospital agreed to accept the lesser of actual charges for services performed, or 105 percent of its computed daily cost, multiplied by the number of member care days, less certain specific noncontractual services performed.

August 1951, the agreement was modified by mutual assent to provide for termination on 90-day written notice by either party.

In 1959, Hospital commenced construction of a new building. It was completed in 1960. This structure was completely financed through bonded indebtedness with interest varying from six to seven percent.

July 27, 1961, Blue Cross advisory committee, in substance, recommended to its board of directors the reimbursement cost formula be changed to provide interest expense of participating hospitals be limited to not more than six percent, computed on the basis of not more than 50 percent of the new capital improvement.

April 12, 1962, Blue Cross board of directors approved the revised cost formula. July 11, 1962, the Iowa Insurance Commissioner, on application, approved the proposed revision.

August 7, 1962, Blue Cross advised all its participating hospitals, including plaintiff, the change would be effective January 1, 1963, later extended to January 1, 1964.

Hospital immediately commenced protesting application of the new reimbursement formula to it or its 1959-1960 capital improvements.

Eventually, and more specifically, in March 1964, Hospital appealed to Blue Cross advisory committee but to no avail.

July 1964, Hospital representatives requested the insurance commissioner reconsider the approval previously given by him. October 24, 1964, Blue Cross board of directors reaffirmed its approval of the proposed change.

February 5, 1965, the insurance commissioner gave notice to Hospital he elected to stand on his prior decision.

From May 1960, to January 1, 1964, Hospital was paid by

Blue Cross in accord with the original cost formula which included its total structural indebtedness with interest.

However, Blue Cross commenced paying Hospital in accord with the modified schedule January 1, 1964, which payments were accepted by Hospital. But, as one witness for Blue Cross stated, they were objecting to it.

By stipulation the parties agreed Hospital was paid $9738.54 less in 1964, and $9123.16 less in 1965, than it would have received under the original contract, subject to some adjustment on accounting procedures with reference to the 1965 figure.

The trial court concluded Hospital, being advised of the insurance commissioner's final decision, failed to then declare the contract terminated; and by continuing to accept compensation computed according to the revised formula impliedly acquiesced in the modification, as a result of which it was entitled to benefits after February 5, 1965, only in accord with the modified reimbursement cost formula.

Hospital was accordingly granted judgment against Blue Cross in the sum of $9738.54 for the year 1964, and $950.35 for the period to February 7, 1965, or a total of $10,688.89. Plaintiff appeals and defendant cross-appeals.

Propositions asserted by Hospital on appeal are, the trial court erred in concluding (1) modification of the reimbursement cost formula was not an ineffective effort to unilaterally change the contract; (2) the contract was modified by implied mutual consent; and (3) the revised formula applied to Hospital's previously effected capital improvements.

Challenging these propositions Blue Cross contends (1) by electing not to terminate the contract and continuing to accept payments in accord with the revised formula, Hospital accepted the modification and is estopped to claim otherwise; (2) the reimbursement formula was subject to change provided the statutory and contractual procedures were followed; and (3) the modification did apply to Hospital.

On cross-appeal Blue Cross claims error on the part of the trial court in holding (1) the modification was not effective as to Hospital until final decision of the insurance commissioner;

and (2) Hospital was not estopped to have damages by reason of laches.

We reverse on both appeals.

I. By its pleadings Hospital sought damages from Blue Cross for breach of contract, and other relief equitable in nature.

The case was submitted, tried and determined by the trial court as an action in equity. It is likewise submitted on appeal.

Under these circumstances it will be considered by us de novo. Rules 344(a)(3) and 344(f)(7), R.C.P., and Henderson v. Hawkeye-Security Ins. Co., 252 Iowa 97, 100, 106 N.W.2d 86.

While the scope of our review is the entire case it will be confined to those propositions relied on by each party for reversal. Steele v. Northup, 259 Iowa 443, 143 N.W.2d 302, 304.

II. The factual situation presented in this case discloses the original contract between these parties, at time of the claimed modification, was executory. It had been partly performed by both but not completely performed by either. Siebring Mfg. Co. v. Carlson Hybrid Corn Co., 246 Iowa 923, 928, 70 N.W.2d 149; Williams v. Cassidy, 237 Iowa 1042, 1050, 23 N.W.2d 423; In re Capital Service, 136 F.Supp. 430, 434; and 17 C.J.S., Contracts, section 7, page 576.

III. Without question an executory contract may be effectively modified by one party *with the consent of the other* provided it does not violate the law or public policy. Stated conversely one party to a contract cannot alter its terms unilaterally or without assent of the other party. However the requisite consent may be either express or implied from acts and conduct. Collins v. Gard, 224 Iowa 236, 240, 275 N.W. 392; Hueston v. Pointer Brewing Co., 222 Iowa 630, 634, 269 N.W. 754; In re Estate of Newson, 206 Iowa 514, 518, 219 N.W. 305; Sioux City and New Orleans Barge Lines, Inc. v. Brunson, 243 F.Supp. 198, 202; 17A C.J.S., Contracts, sections 373–375, pages 419–428; 17 Am.Jur.2d, Contracts, section 465, page 934; and Simpson, Law of Contracts, Hornbook Series, Second Ed., page 186.

And whether a contract has been modified by the parties thereto is ordinarily a question of fact. Commercial Sav. Bk.

v. Dunning, 202 Iowa 478, 484, 210 N.W. 599, 59 A.L.R. 983, and 17 Am.Jur.2d, Contracts, section 465, pages 934–936.

IV. Although there is some degree of confusion as to the necessity of consideration to support a modification, we are not here called upon to consider that matter and do not do so. In this regard however see Siebring Mfg. Co. v. Carlson Hybrid Corn Co., 246 Iowa 923, 928, 70 N.W.2d 149; Williams v. Cassidy, 237 Iowa 1042, 1050, 23 N.W.2d 423; 17A C.J.S., contracts, section 376, page 428; 17 Am.Jur.2d, Contracts, section 469, page 939; 5 Drake Law Review 3; 47 California Law Review 74, 92–98; and Simpson, Law of Contracts, Hornbook Series, Second Ed., pages 187–189.

V. The basic issue involved is whether Hospital at anytime manifested assent to a modification of the reimbursement cost formula.

Blue Cross maintains Hospital, by failing to terminate the agreement and continuing to accept payments under the revised formula, acquiesced in and is estopped to now claim absence of consent.

With this contention we cannot agree.

As previously disclosed, from time of announcement by Blue Cross of the proposed modification, Hospital openly and repeatedly voiced objection to the change and its applicability to Hospital's previously effected capital improvements.

It is thus apparent Hospital never expressly agreed or consented to the revised cost formula.

The question now posed is whether Hospital by acts and conduct consented to the modification or is estopped to challenge it.

We are satisfied the mere acceptance by Hospital of a lesser amount than that prescribed in the original contract did not of itself disclose or stand as an assent to the modification. B. C. Truck Lines, Inc. v. Kelley, 93 Ga.App. 529, 92 S.E.2d 309, 310, and 17A C.J.S., Contracts, section 375, pages 425–428.

VI. Furthermore Hospital was not, by any attempted modification or breach on the part of Blue Cross, compelled to terminate the contract or lose its right of redress.

Simply stated Hospital elected to stand by the contract

and seek recovery for any claimed breach. This it could do. Richmond and Jackson v. The Dubuque & S. C. R. Co. and The I. C. R. Co., 40 Iowa 264, 269, citing Richmond v. The Dubuque and Sioux City R. Co., 33 Iowa 422, 495; 17A C.J.S., Contracts, section 458, page 589; and 17 Am.Jur.2d, Contracts, sections 445–447, pages 903–910.

In other words Hospital, by accepting payments under repeated protest, and continued performance on its part, reserved the right to recover for breach, if any, by Blue Cross.

The law does not sanction breach of contract as a means of escape from its burdensome terms nor will it reward an offending party.

In support of the previously stated position taken by Blue Cross it cites and leans rather heavily on Siebring Mfg. Co. v. Carlson Hybrid Corn Co., 246 Iowa 923, 70 N.W.2d 149, and Williams v. Cassidy, 237 Iowa 1042, 23 N.W.2d 423. We find neither of those cases here applicable nor persuasive.

In Siebring, supra, the parties entered into a contract for sale by plaintiff to defendant of 2000 corncrib roofs at specified prices. Subsequently and prior to full performance plaintiff advised defendant a steel strike prevented the securing of material other than at an increased price on the black market. It was then orally agreed steel should be so obtained and defendant would pay the stated price increases. Deliveries and payments were made on the new basis for a short time until defendant notified plaintiff it would require subsequent deliveries be made on the original contract basis. This court there held the oral modification bound the defendant to pay the increases. Stated otherwise it was held a manifestation of mutual assent to the modification was evident. On this subject see also 17 Am.Jur.2d, Contracts, section 466, page 936.

Williams v. Cassidy, supra, involved an action by a real-estate purchaser for specific performance under a new and substituted agreement. There an executory contract for sale of real estate, partially performed, was expressly rescinded and a new contract effected on a lower price basis fully performed by the purchaser. We held the new agreement was supported by sufficient consideration and the purchaser was entitled to

the remedy sought. This case turned entirely on rescission and consideration for a new or substituted agreement.

Blue Cross also claims that where a contract is lacking in mutuality so that one party may terminate it at anytime on reasonable notice or on the notice specified in the agreement, such party may impose new terms and conditions.

No authority has been cited and none has been found disclosing the principle here urged by Blue Cross has ever been adopted in this state. And, without here determining its applicability under other circumstances, we find it inapplicable under the factual situation presented in the case at bar.

As a result there is no need to extend this opinion by elaborating upon the foreign authorities cited by Blue Cross in support of its stand.

■ VII. In connection with the propositions here being considered we also find the doctrine of estoppel is not applicable and affords no benefit to Blue Cross.

In Goodwin Tile and Brick Co. v. DeVries, 234 Iowa 566, 568, 13 N.W.2d 310, 155 A.L.R. 346, this court said:

"The essential elements of equitable estoppel, or estoppel in pais, have been listed as false representation or concealment of material facts, made to one without knowledge of the real facts, with the intention that it be acted upon; and reliance thereon by the party to whom made, to his prejudice and injury. Stookesberry v. Burgher, 220 Iowa 916, 262 N.W. 820. That each element should be proven clearly, convincingly, and satisfactorily is noted in Smith v. Coutant, 232 Iowa 887, 891, 6 N.W.2d 421, 424, which, after considering many authorities, states:

" 'In general, the doctrine of equitable estoppel is based upon the grounds of public policy, fair dealing, good faith, and justice, and its purpose is to forbid one to speak against his own act, representations, or commitments, to the injury of one to whom they were directed and who reasonably relied thereon. Such a doctrine is neither odious nor in disfavor, in either law or equity.' "

Blue Cross knew, or had reasonable cause to know, Hospital did not give approval to the proposed cost formula modification and was in fact vigorously objecting to it.

Under these circumstances it cannot reasonably be said Hospital misled Blue Cross by any act or conduct on the part of the former.

There is no evidence disclosing Hospital concealed or misrepresented material facts not known to Blue Cross, that Blue Cross relied on any assurances or conduct by Hospital, or that Blue Cross was in fact deceived. The material facts were at all times as well known to one party as to the other.

In this case the burden of proof was on Blue Cross to establish all elements of estoppel which it had asserted. This it failed to do. See In re Estate of MacVicar, 251 Iowa 1139, 1144, 104 N.W.2d 594, and Atlas Coal Co. v. Jones, 245 Iowa 506, 522, 61 N.W.2d 663.

VIII. Blue Cross also takes the position the reimbursement cost formula was open to change by it provided statutory and contractual requirements were followed.

As an abstract proposition this may be true. But that alone does not mean a change so effected can serve ipso facto to alter the terms of any and all existing contracts, absent consent or acquiescence by the other contracting party or termination of the agreement and creation of a new one. We shall deal first with the statutory phase of the proposition presented.

Laws regulating the insurance business are remedial, being enacted under the state's police power, because such business has been found to be impressed with public interest and the public is entitled to protection against unscrupulous and illegal practices. Chapter 505, Code, 1962; Bankers Life & Cas. Co. v. Alexander, 242 Iowa 364, 373, 45 N.W.2d 258; 44 C.J.S., Insurance, section 55, page 518; and 29 Am.Jur., Insurance, section 49, page 464.

The insurance commissioner is an administrative officer. As such he may, at times, exercise quasi-legislative or quasi-judicial powers. See sections 505.8 and 505.9, Code, 1962; 44 C.J.S. Insurance, section 57(b), page 525; and 33 Iowa Law Review 335, 339.

This does not mean such official has or exercises legislative or judicial powers in the true sense.

More specifically, in approving a contract involving modification of a reimbursement cost formula, he performs an act quasi legislative in nature in that it is to be effective in futuro. Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 226, 29 S.Ct. 67, 69, 53 L.Ed. 150; West Flagler Amusement Co. v. State Racing Commission, 122 Fla. 222, 165 So. 64, 65; and Hyson v. Montgomery County Council, 242 Md. 55, 217 A.2d 578, 582, 583.

The commissioner may have discretion to act but it is the ultimate function of the courts to determine whether he has acted according to law or abused his discretion, and to construe the legal meaning and effect of his administrative actions. Iowa Mutual Tornado Ins. Assn. v. Timmons, 252 Iowa 163, 169–174, 105 N.W.2d 209; Bankers Life & Cas. Co. v. Alexander, supra, 242 Iowa at 371; 44 C.J.S., Insurance, section 58, page 526; and 33 Iowa Law Review 335, 343.

While authority of the commissioner in approving the formula modification here involved is not questioned, the effect of this action upon the existing contract between Blue Cross and Hospital is challenged.

The issue presented goes to the legal effect of the commissioner's approval upon an existing, valid, executory contract between an insurer and a servicing agent, not upon a policy between an insurer and the insured.

Presumably the commissioner, in approving a modification of the reimbursement cost formula, was acting in the best interests of the public. But his quasi-legislative order, to the extent it affected the existing contractual obligation between Blue Cross and Hospital, contravened both the federal and state constitutional provisions forbidding impairment by the state of existing contractual rights and duties. This means that as to Hospital, absent an agreement to the modification, acquiescence or termination of the existing contract and creation of a new one, the order issued was constitutionally proscribed. See Constitution of the United States, Article I, section 10, and Constitution of Iowa, Article I, section 21, both providing in substance, to the extent here material, no law shall be passed impairing the obligation of contracts.

And, if the legislature cannot by statute constitutionally abrogate the terms of an existing contract, neither can the insurance commissioner do so in the performance of a quasi-legislative function which has legislative force and effect. See John P. King Mfg. Co. v. City Council of Augusta, 277 U.S. 100, 111–114, 48 S. Ct. 489, 493, 494, 72 L.Ed. 801; Appleby v. Delaney, 271 U.S. 403, 409, 46 S.Ct. 581, 583, 70 L.Ed. 1009; 16A C.J.S., Constitutional Law, section 378, page 50; 12 C.J., Constitutional Law, section 725, page 1066; 2 Am.Jur.2d, Administrative Law, section 298, page 125; and 16 Am.Jur.2d, Constitutional Law, section 450, pages 797, 798.

Under the conditions here existing, the action of the commissioner in approving the revised cost formula could not be constitutionally so extended as to impair the obligation of the contract then existing between Blue Cross and Hospital. See 29 Am.Jur., Insurance, section 50, pages 466, 467, citing British America Assur. Co. v. Colorado & S. Ry. Co., 52 Colo. 589, 125 P. 508, 511, 512, 41 L.R.A., N.S., 1202; and Filipkowski v. Springfield Fire & Marine Ins. Co., 206 Wis. 39, 238 N.W. 828, 830, 78 A.L.R. 613.

We can only conclude the exercise of a power pursuant to statute authorizing the commissioner to approve contracts between an insurer and a servicing agency did not serve to make the subject modification applicable to Hospital.

IX. The contract executed May 12, 1959, provides in part: "The cost of the Hospital in rendering hospital service shall be calculated according to a reimbursement cost formula to be established by the Hospital Advisory Committee of the Service Corporation, and approved by the Board of Directors of the Service Corporation and the Iowa Insurance Commissioner. Such formula, *as tentatively established by the Hospital Advisory Committee,* provides for the calculation of such cost substantially as follows: * * *." (Emphasis supplied.)

In this connection Blue Cross contends the word "tentatively" means conditional or provisional, opening the door to periodic modifications. We are not here concerned with the word "tentatively", lifted out of context, but rather with the

entire contract, and in particular the term "as tentatively established by the Hospital Advisory Committee".

 Where, as in this case, the terminology employed is uncertain or susceptible to more than one meaning, we may, under established rules, proceed to effect an interpretation of the instrument in order to ascertain the meaning and manifestation of words used. In so doing we search for intent of the parties as disclosed by what they said. Rule 344(f)(14), R.C.P.; Bruhl v. Thul, 257 Iowa 889, 892, 893, 134 N.W.2d 571; Restatement of Contracts, Iowa Annotations, section 226; Williston's Treatise on Law of Contracts, Revised Ed., sections 601-610; Simpson, Law of Contracts, Hornbook Series, Second Ed., section 102. See also Aultman v. Meyers, 239 Iowa 940, 949, 950, 33 N.W.2d 400.

We also look to the matter of intent as it existed at time the contract was executed. Huntington v. Jacob Haish Co., 190 Iowa 1197, 1200, 181 N.W. 480; 17A C.J.S., Contracts, sections 294, page 27; 295, page 63·; and 359, page 361.

 Clearly the contract does not provide: The cost of the hospital in rendering hospital service shall be calculated according to a reimbursement cost formula to be tentatively established by the Hospital Advisory Committee of the Service Corporation, and approved by the board of directors of the Service Corporation and the Iowa Insurance Commissioner, *it being specifically understood and agreed the formula may from time to time be revised, altered or modified, to all of which hospital hereby consents and agrees.*

Adoption of the view urged by Blue Cross would require reading words into the contract which are neither specifically nor impliedly contained in the instrument. This we cannot do.

Presumably Blue Cross Hospital Advisory Committee originally recommended the reimbursement cost formula contained in the 1959 contract between Blue Cross and Hospital.

However, its action in so doing was, and could in no event be of any force or effect until adoption of the proposal by Blue Cross board of directors and approval by the insurance commissioner.

This means any reimbursement cost formula established

by the hospital advisory committee is preliminary, tentative or provisional in that it may only be finalized or become effective if and when given requisite approval.

We are persuaded (1) it is in this sense the word tentatively is here employed; and (2) the phrase "as tentatively established by the Hospital Advisory Committee" neither says nor implies Blue Cross may, by unilateral action, effectively modify the reimbursement cost formula at anytime or times it may so elect.

X. Blue Cross also takes the position Hospital is estopped to have damages by reason of laches.

At this point some repetition of the factual developments is unavoidable.

Upon receiving notice of the proposed modification, about August 7, 1962, Hospital began protesting and thereafter repeatedly voiced opposition to the revision.

Failing in these efforts it undertook an appeal March 17, 1964, to the Blue Cross Hospital Advisory Committee, which was denied May 23, 1964.

July 1964, Hospital requested the insurance commissioner reconsider his prior action in connection with approval of the revised formula.

October 27, 1964, Blue Cross board of directors reaffirmed its position on the changes to be made.

February 5, 1965, the commissioner gave notice he elected to stand on the order previously issued.

June 4, 1965, Hospital commenced the instant action.

This court has previously held, laches is an equitable doctrine based on public policy. It relates to delay in the assertion or prosecution of a claim, working to the disadvantage or prejudice of another. See In re Estate of Shivvers, 240 Iowa 93, 103, 34 N.W.2d 632. To the same effect is Jennings v. Schmitz, 237 Iowa 580, 589, 20 N.W.2d 897, where we held the doctrine applicable only where it would be inequitable to permit recovery or it is clearly demanded in the interests of justice.

And in an early case we said: "* * * laches alone is not in itself a defense to an action on contract, unless of such duration as to cover the statutory period of limitation; but,

if accompanied with other things, it may amount to an estoppel, * * *." State Savings Bank v. Miller, 146 Iowa 83, 88, 124 N.W. 873.

See also Boehnke v. Roenfanz, 246 Iowa 240, 248, 249, 67 N.W.2d 585, 54 A.L.R.2d 1, and 17A C.J.S., Contracts, section 531, pages 1025–1027.

In addition it is generally understood that while delay in enforcing a right is an element of the doctrine, that alone does not constitute laches. 30A C.J.S., Equity, section 116, page 45; and 27 Am.Jur.2d, Equity, sections 152–176, pages 687–723.

Basically there can be no premise upon which the doctrine of laches may stand absent some wrong, such as a breach of contract, with a subsequent action for redress.

As heretofore determined the attempt by Blue Cross to impose its modification proposal on Hospital constituted a unilateral attempt to modify the existing agreement.

The question now to be resolved is whether the refusal by Blue Cross to reimburse Hospital pursuant to terms of the contract was in fact a breach.

In that regard an unjustified failure to perform all or any part of what is promised in a contract is a breach, for which the aggrieved party is entitled to be compensated in damages. Restatement, Contracts, section 314; 17 Am.Jur.2d, Contracts, section 441, page 897; and Simpson, Law of Contracts, Hornbook Series, Second Ed., page 377.

We are satisfied any failure by Blue Cross to pay in accord with the reimbursement cost formula contained in the original contract constituted a breach.

Under the existing factual situation Hospital had the elective right to (1) ask damages under the terms of the contract; (2) disaffirm the contract and ask for value of services performed; or (3) ask specific performance. See Shriver v. Cook, 256 Iowa 271, 278, 127 N.W.2d 102.

Hospital, as aforesaid, elected to stand on the contract and seek compensatory damages.

In support of its position to the effect Hospital is estopped to recover by virtue of the doctrine of laches, Blue Cross cites

and relies in part on Sinclair v. Allender, 238 Iowa 212, 26 N.W.2d 320, but that case is not in point. There an action was brought more than ten years after delivery of deed to establish a resulting trust in real estate. In holding the doctrine of laches applicable this court pointed out that delay or postponement of action had been unfair to the opposing party, he had been damaged or prejudiced as a result, and it would be inequitable to force the claim at such a late date.

Wokoun v. Jameson, 183 Iowa 956, 167 N.W. 676; State Bank of Iowa Falls v. Brown, 142 Iowa 190, 119 N.W. 81, 134 Am. St. Rep. 412; and Moore v. Howe, 115 Iowa 62, 87 N.W. 750, also cited by Blue Cross, all deal with the matter of delay in attempting to assert rescission based on fraud or misrepresentation, and are therefore inapplicable.

We are here dealing not with rescission, but rather with a damage action for breach of an executory agreement.

In the instant case the contract called for continuing performance with periodic payments by Blue Cross to Hospital, and neither party elected to rescind or declare a termination.

This then means, every time Blue Cross failed to remit the full amount due Hospital under the terms of the existing contract there was created a distinct and independent breach upon each of which an action would lie.

But Hospital did not choose to pursue this course. It elected to continue performance, deferring any action until there had been several breaches. This it had the right to do.

And in so doing it had not only the privilege but was in fact required to seek recovery for any and all breaches of the contract prior to commencement of the action. In support of the foregoing see 25A C.J.S., Damages, section 193, page 256; 22 Am.Jur.2d, Damages, section 19, page 35; and Simpson, Law of Contracts, Hornbook Series, Second Ed., section 188, page 380.

Under the factual situation here disclosed there is no rational basis upon which to find the doctrine of laches bars Hospital's right of recovery.

XI. We conclude the trial court erred in holding (1) the contract was modified by mutual assent; and (2) Hospital's

right to damages was limited to time of announcement by the insurance commissioner, he elected to stand on his original order of approval.

By virtue of the foregoing there is no need to now consider other propositions urged on appeal by either party.

Reversed on both appeals and remanded for further proceedings and judgment consistent with this opinion.

All JUSTICES concur except LEGRAND, J., who takes no part.