**B & H APARTMENTS PARTNERSHIP;
Guy C. Beals, Jr., and Eugene Hiskey,
Partners, Plaintiffs–Appellants,**

v.

**Kenneth D. THARP, Kristen S. Tharp,
Defendants–Appellees,**

**and**

**Joseph R. Schaffer and Leah
Schaffer, Defendants.**

No. 89–1661.

Court of Appeals of Iowa.

Dec. 27, 1990.

---

Donald G. Henry of Belin Harris Helmick Tesdell Lamson McCormick, P.C., Des Moines, for appellants.

Robert B. Scism of Scalise, Scism, Sandre & Uhl, Des Moines, for appellees.

Considered by SCHLEGEL, P.J., and HAYDEN and HABHAB, JJ.

SCHLEGEL, Presiding Judge.

Plaintiffs, B & H Apartments Partnership (B & H), Guy C. Beals, Jr., and Eugene Hiskey, appeal district court rulings granting foreclosure of a real estate contract but denying personal judgments against defendants, Kenneth D. and Kristen S. Tharp (Tharps) and Joseph R. and Leah Schaffer (Schaffers). The issues presented are (1) whether assignors of a vendee interest in a real estate contract may, by their assignment, escape personal liability to contract vendors, and (2) whether the contract vendors, by their actions or

inactions in enforcing contract provisions against assignee-vendees, released the assignor-vendees from personal liability. We think the assignors remain liable and, therefore, reverse.

Beals and Hiskey, doing business as B & H Apartments, owned a six-unit apartment building in Des Moines. On March 1, 1983, they entered into a real estate contract for the sale of the property to the Tharps for $55,500. The contract specified that the vendee should not remove or destroy improvements or make material alterations during the contract without written consent of the vendors. The contract further specified that "the liability of Buyer under this contract shall not cease or be terminated by the assignment of this contract by the Buyer, unless such liability is specifically released by the Seller by a writing to such effect...." On November 30, 1983, the Tharps assigned the real estate contract and executed a quit claim deed to the Schaffers. The assignment required the Schaffers to assume all terms of the Tharps' contract with B & H and incorporated that contract by reference.

Under a "Statement" and "Acceptance of Contract Assignment" prepared by Tharps, B & H agreed that Tharps had fulfilled various contractual obligations to give notice of sale or assignment. This document further stated that B & H agreed that the Tharps "may assign and convey their interests in [the] real estate and purchase contract" to the Schaffers. The document does not purport to be a novation.

In August 1984 B & H discovered that the Schaffers had gutted the building, removing everything but the wall studs. Concerned by the blatant contract violation and the reduction in value of the property, B & H discussed the problem with the Schaffers. Whether B & H contacted the Tharps is disputed. There is undisputed evidence that Hiskey discussed with Mr. Tharp the extensive work being done on the property sometime in the summer of 1984.

The Schaffers promised a major renovation of the building. B & H took no legal action. Little significant improvement was made to the empty building shell. The Schaffers continued to make payments on the contract until April 1987, when they disappeared. B & H demanded payment under the contract from the Tharps, but the Tharps refused because the property was then worth considerably less than the contract balance. Moreover, because of inadequate setbacks, the nonconforming use could not be changed except to a permitted use.

B & H sued the Tharps and the Schaffers[1] for breach of contract and to foreclose defendants' interests in the real estate pursuant to Iowa Code chapter 654. Plaintiffs sought joint and several liability against the Tharps and the Schaffers for $57,653.32 principal and interest remaining on the real estate contract. The case was tried to the court, sitting without a jury, which entered a decree in favor of defendants in all respects. Acting on a rule 179(b) motion to enlarge and amend findings, the trial court entered a supplemental decree granting plaintiffs an *in rem* judgment for $61,839.46, interest, costs, and attorney fees. The court entered a judgment of foreclosure, but again denied plaintiffs' requested relief of personal judgments against defendants.

In reaching its decision, the trial court found that "[t]he question of Tharps' continuing liability on the said contract ... was materially altered and affected by the failure of Plaintiffs to immediately notify, or at least inform, Tharp as to the existing facts regarding the discovered demolition." Thus, the court held B & H "effectively discharged Tharp[s] as suret[ies] ... upon their acceptance of, and acquiescence in, the remodeling and resultant demolition of the value of the asset," while accepting contract payments and without notice to the Tharps. Plaintiffs' actions, the trial court concluded, amounted to a ratification of the Schaffers' conduct, a modification of the contract, and changed the nature and

---

**1.** The Schaffers were served notice by publication, *see* Iowa R.Civ.P. 50, 60, but they have not appeared in this suit. Efforts to locate them were unsuccessful.

value of the underlying security. Finally, the court stated, "No part of the fault for the Schaffers' destructive acts, or the loss of the nonconforming use of the property, can be attributed to the Tharps."

Because this case was tried in equity, our review is de novo. Iowa R.App.P. 4; *see Rector v. Alcorn,* 241 N.W.2d 196, 199 (Iowa 1976) (quoting *Grandon v. Ellingson,* 259 Iowa 514, 518, 144 N.W.2d 898, 901 (1966)); *Davenport Osteopathic Hosp. Ass'n v. Hospital Service, Inc.,* 154 N.W.2d 153, 157 (Iowa 1967). We give weight to the trial court's findings of fact, especially when they are dependent on the credibility of witnesses, Iowa R.App.P. 14(f)(7), but like the trial court's conclusions of law, we are not bound by them.

Plaintiffs contend the trial court erred in failing to order entry of a personal judgment for the deficiency. First, plaintiffs argue that the trial court erred in finding them at fault for any depreciation in the value of the property. Second, plaintiffs argue the trial court erred in finding a contract modification discharging Tharps.

■ Under the contract and Iowa case law, an assignor of a contract is not released from liability unless the parties agree to a novation, which requires (1) a previous valid obligation, (2) agreement of all parties to a new contract, (3) extinguishment of the old contract, and (4) the validity of the new contract. *See Tuttle v. Nichols Poultry & Egg Co.,* 240 Iowa 199, 209, 35 N.W.2d 875, 880 (1949); *Eitzen's Estate v. Lauman,* 231 Iowa 1169, 1175, 3 N.W.2d 546, 549 (1942); *Wade & Wade v. Central Broadcasting Co.,* 227 Iowa 422, 426, 288 N.W. 439, 441 (1939); *Des Moines Joint Stock Land Bank v. Allen,* 220 Iowa 448, 461, 261 N.W. 912, 919 (1935); *Moody v. Bogue,* 310 N.W.2d 655, 661 (Iowa App. 1981). There is nothing express or implied to show plaintiffs released Tharps from their liability under the contract. Tharps' unilateral actions, such as issuing a quit claim deed to Schaffers, could not change the underlying contract or their liability pursuant to that contract. *See Davenport Osteopathic Hosp. Ass'n,* 154 N.W.2d at 157. In other words, irrespective of Tharps' interest or lack of interest in the property, *see Rector,* 241 N.W.2d at 200 (vendor keeps legal title, and vendee takes equitable title); they may not avoid their contractual obligation without a contract to the contrary, *i.e.,* a novation. The Tharps clearly remain liable under the contract based upon these principles.

■ The question remaining is whether acts or omissions as between vendor and assignee, such as allowing an ongoing breach, modifying contractual rights, discharges the assignor from further obligations under the contract. The case law again is unedifying; however, there is no doubt that an executory contract may be modified by consent, and that consent may be express or implied from the conduct of the parties. *Davenport Osteopathic Hosp. Ass'n,* 154 N.W.2d at 157 (citations omitted).

First, we note that the trial court's implicit assumption that the vendee-assignor is merely a surety is not supported by our case law. Our search reveals only the following statement:

With the exception of certain Michigan decisions, there is almost no authority in support of the proposition that a vendee will be treated as a mere surety so as to be released in toto by dealings between vendor and assignee modifying, as to the assignee, certain terms of the purchase.

Annotation, *Release of vendee (or intermediate assignee of vendee's interest) by subsequent dealings between assignee and vendor,* 125 A.L.R. 979, 979 (1940). The annotation author traces the Michigan case law to an *assumption* in *Barnard v. Huff,* 252 Mich. 258, 233 N.W. 213 (1930), that as between assignor and assignee, the assignor is a surety. The author notes that, even if this assumption were true, it does not follow that the assignor is a mere surety as between the assignor and the vendor as is held in later Michigan cases. Annotation, 125 A.L.R. at 981.

Next, we note that the record shows neither plaintiffs nor the Tharps agreed to allow Schaffers to alter the building, either before or during destruction of the interior of the building. Schaffers alone clearly

breached the contract provision prohibiting material alterations, and neither plaintiffs nor Tharps discovered the breach until the damage had been done to the property. It is likely that both plaintiffs and Tharps, recognizing that the value of the property had been reduced considerably, did not pursue any legal remedies because the Schaffers were making regular payments, and all involved hoped for the best.

We cannot say, as the trial court found and the Tharps now urge, that plaintiffs' failure to pursue legal remedies necessarily constituted consent to a contract modification. In a couple of cases in which the appellants asked the courts to bar the plaintiffs' action for a breach of contract because of the existence of a prior breach of contract, the supreme court noted:

> The contract must be regarded as a whole; the rights and obligations of the parties depend upon, and are determined by it as a whole. One of the parties, by a voluntary breach of one or all of its covenants, cannot impose upon the other the necessity of regarding it as wholly abandoned, or treating the breach as a total breach, whereby the innocent parties would be deprived of benefits and advantages that would otherwise flow from them. They would have the right so to treat it, but the law will not compel them to pursue that course.

*Richmond v. Dubuque & S.C. R.R.*, 40 Iowa 264, 269 (1875) (quoting *Richmond v. Dubuque & S.C. R.R.*, 33 Iowa 422, 495 (1871)); *see Davenport Osteopathic Hosp. Ass'n*, 154 N.W.2d at 158. We are not prepared to depart from these principles and, based on their failure to pursue legal remedies for the Schaffers' breach of contract in materially altering the property, to bar plaintiffs' action for default to recover the balance of the contract. We hold that the Tharps remained personally liable on the contract with plaintiffs.

REVERSED.