# IN THE COURT OF APPEALS OF IOWA

No. 24-0763
Filed June 18, 2025

**MIDWESTONE BANK, trustee of the HAYWOOD B. BELLE FAMILY TRUST,**
　　Plaintiff-Appellee,

**vs.**

**SHORT'S BURGER & SHINE, LLC, KEVIN PEREZ and DAN OUVERSON,**
　　Defendant-Appellants.
_____

　　Discretionary Review from the Iowa District Court for Johnson County, David M. Cox, Judge.


　　A tenant appeals from an order and writ of removal and possession in a commercial forcible-entry-and-detainer action. **AFFIRMED.**


　　Shawn Shearer (argued) of The Shearer Law Office, P.C., Des Moines, for appellant.

　　Siobhan Briley (argued) of Pugh Hagan Prahm, PLC, Coralville, for appellee.


　　Heard at oral argument by Schumacher, P.J., and Buller and Sandy, JJ.

**BULLER, Judge.**

Building tenant Short's Burger and Shine, LLC and its two owners, Kevin Perez and Dan Ouverson, (Short's) appeal from an order and writ of removal and possession in a commercial forcible-entry-and-detainer (FED) action brought by MidWestOne Bank (MWO) as trustee of the Haywood B. Belle Family Trust (Trust). The beef between these parties concerns the lease: Short's challenges the effect of a prior FED action and alleged lease violations, whether the lease was modified, and if strict compliance was necessary or equitable. We affirm.

## I.    Background Facts and Proceedings

Short's has operated an award-winning restaurant and bar in a downtown Iowa City building (premises) since 2008; their initial occupancy was pursuant to a sublease. On May 1, 2011, Short's entered into a lease agreement for the premises for an initial term of three years with the option to "renew th[e] lease for 7 additional terms of 3 years each by giving Landlord a written notice of intent to renew at least 90 days prior to the expiration of the term that precedes each such renewal term." This meant Short's had to give written notice to the owner of the premises by January 30 in years when the lease was set to expire—2014, 2017, 2020, and 2023 to date. The lease specified abandonment as one of the events of default: "'Abandonment' means the Tenant has failed to engage in its usual and customary business activities on the premises for more than fifteen (15) consecutive business days." The lease also included a clause providing, "Tenant shall make no structural alterations or improvements without the prior written consent of the Landlord."

The record is not clear on whether the 2014 notice of intent to renew was done verbally or in writing. Haywood B. Belle passed away in 2016, after which the Trust became the owner of the premises; MWO was the executor of Belle's estate and then became trustee. A trustee officer testified that the 2017 notice of intent to renew was timely provided through email, but no such emails were provided to the court below. The 2020 notice of intent to renew was made verbally.

Short's temporarily closed—without the Trust's permission—from April to August 2022 for deep cleaning, redecorating, remodeling, and to repair a "rotting wall inside of the kitchen." This cost "between $45 and $60,000." In May, MWO issued Short's a written notice of default because Short's had ceased normal business activity and MWO demanded that the default be cured—i.e., that Short's resume normal business activity—within ten days under the conditions of the lease. Perez testified that Short's could not have cured within ten days because the natural gas supply was shut off for the renovations. But MWO did not know about the gas being shut off until June. Short's responded to the notice of default by informing MWO that they would re-open in "two to four months" once renovations were completed.

MWO then delivered notice of termination of tenancy in May 2022 to "declare th[e] lease to be terminated" with more than a month for Short's to vacate the premises by June 30. Short's continued its renovation work and did not vacate the premises. In July, MWO issued a three-day notice to quit.

MWO initiated an FED action (FED#1)[1] on July 15 for "[f]ailure to vacate after termination of tenancy." Short's continued to remodel the space, renewed its insurance coverage to extend beyond the lease expiration, and made rent payments that MWO did not accept. MWO filed a second FED action (FED#2)[2] in January 2023 and petitioned to recover past-due rent. On March 9, 2023, MWO voluntarily dismissed FED#1 with prejudice and FED#2 without prejudice.

About an hour after MWO filed the dismissals, Short's received a letter directing that the premises needed to be vacated by April 30 (the end of the lease term) because the window for renewal had expired. Short's responded with an affirmation of renewal on March 10 that it "ha[d] previously indicated . . . in writing and verbally that it was exercising its option to renew" the lease and paid nine months rent for the months the FED#1 litigation was pending because "MWO was refusing to accept rent" during that time. But MWO claimed the March response was the first time Short's had expressed interest in renewing.[3] On March 15, MWO

---

[1] Our supreme court ordered submitted with this appeal an issue relating to MWO's request to take judicial notice of the proceedings in FED#1. *See* Iowa R. Evid. 5.201(d). We decline to take judicial notice and limit the record to the "[o]riginal documents and exhibits filed in the district court case from which the appeal is taken." *See* Iowa R. App. P. 6.801. Short's doesn't explicitly agree to or request judicial notice of FED#1. *See Leuchtenmacher v. Farm Bureau Mut. Ins.*, 460 N.W.2d 858, 861 (Iowa 1990) (noting we generally don't take judicial notice "without an agreement of the parties"). Relevant portions of FED#1 were submitted as exhibits below. And MWO, like Short's, could have offered other parts of the FED#1 record if it believed they were pertinent. In any event, declining to take notice of the entire FED#1 record does not affect the outcome here.

[2] The parties agree FED#2 is not relevant to the legal analysis in this appeal.

[3] Perez testified to verbal conversations with an MWO trust officer that occurred in May, June, and July 2022 regarding Short's exercising its option to renew and its intent to stay "for a long time." But the trust officer testified the conversations didn't happen and that Perez never said anything that made it clear "Short's was going to stay in the space past the expiration of the current lease term."

issued a thirty-day notice of termination of the tenancy and demand for possession, which would "expire and terminate at midnight on April 30, 2023, and will not be renewed." In late March 2023, Short's and MWO executed an annual sidewalk-easement agreement with the city to operate their outdoor patio to run nine months beyond the lease term.

Short's did not vacate the premises by April 30. MWO served another three-day notice to quit and filed a third FED action (FED#3)—the subject of this appeal. The court held evidentiary hearings, and the parties filed post-trial briefs. Short's argued that renewal was done verbally in the past, that the lease was modified to eliminate the "in writing" requirement for renewal, and that Short's renewed prior to January 30. It also argued the June 2022 termination of the lease revoked MWO's option to renew until MWO dismissed FED#1 in March 2023, at which point MWO retracted its repudiation of the lease and the option resumed. Short's claimed the March affirmation of renewal after FED#1 was dismissed related back to before January 30 and was therefore timely because it could not renew while FED#1 was pending and renewed at the first opportunity after dismissal.

A magistrate entered judgment and issued an order of possession in favor of MWO, finding Short's failed to provide MWO a notice to renew the lease prior to ninety days before the lease terminated and that Short's was not excused from providing a notice by MWO's alleged repudiation of the contract by the June 30, 2022 lease termination. Short's appealed to the district court. *See* Iowa Code § 631.13 (2024). The district court affirmed the magistrate's ruling. Short's then filed an application for discretionary review and motion to stay issuance of the writ

of possession with the supreme court. The supreme court stayed the writ of possession, granted the application, and transferred the case to us for resolution.

## II. Standard of Review

"Forcible entry and detainer actions are equitable actions, and therefore our scope of review is de novo." *Porter v. Harden*, 891 N.W.2d 420, 423–24 (Iowa 2017); *see also* Iowa R. App. P. 6.907.

## III. Discussion

Short's challenges the effects of FED#1 and compliance with the lease, whether the lease was modified, and if strict compliance was necessary or equitable. We address each argument in turn.

### A. Pending FED#1 Litigation

Short's asserts the renewal option was not open, that MWO repudiated, and it retroactively cured the untimely exercise of renewal as a result of the pending FED#1 litigation and lease violations. Concerning the renewal option, this argument fails because the Trust sent the notice of termination and three-day notice to quit pursuant to the lease when Short's abandoned the premises and failed to cure. Nothing in the record suggests Short's was unable to provide written notice before the FED#1 litigation commenced on July 15, 2022, or even afterward. And as the magistrate noted: "While Kevin Perez did not testify that he simply forgot to provide written notice, that does not seem that far off from what happened. . . . Shorts could have easily spent a few minutes to send a written notice, even if Shorts believed that doing so would have been futile" during the FED#1 proceedings.

Short's also claims MWO allegedly repudiated the lease by declaring the lease terminated in June 2022 and subsequently filing FED#1, denying Short's the benefits of possession of the premises and serving as notice of forfeiture. And it says that, because MWO's alleged repudiation was retracted when it dismissed FED#1, Short's has a right to retroactive cure that relates its untimely affirmation of renewal on March 10 back to before January 30—during the alleged repudiation period—such that it would arguably be timely.

"A repudiation is accomplished by words or acts before the time of performance evidencing an intention to refuse to perform in the future." *Pavone v. Kirke*, 807 N.W.2d 828, 833 (Iowa 2011). This typically "consists of a statement that the repudiating party cannot or will not perform." *Conrad Bros. v. John Deere Ins.*, 640 N.W.2d 231, 241 (Iowa 2001) (citation omitted). And "[t]he language of the statement must be sufficiently positive to be reasonably interpreted to mean that the party will not or cannot perform." *Homeland Energy Sols., LLC v. Retterath*, 938 N.W.2d 664, 698 (Iowa 2020) (cleaned up).

The record does not support the notion that MWO repudiated. Short's breached the terms of the lease by closing for longer than permitted under the lease's terms and remodeling the premises without MWO's written permission. MWO then properly followed the termination process outlined in the lease agreement for abandonment (an explicit event of default in the lease). Short's didn't cure the default, so MWO didn't repudiate the agreement when it followed the process outlined in the lease. Similarly, we recognize the rejection of rent by MWO after the lease was terminated and when Short's refused to vacate the premises is not a "sufficiently positive" statement of repudiation of the lease and

option. *Cf. id.* (noting one party's nonperformance "may be excused" if the other party repudiated the agreement first). And because there was no repudiation, there is no retroactive cure to make the untimely affirmation of renewal relate back to before January 30, 2023.

### B. Lease Modification

Short's asserts the lease was modified, eliminating the written requirement for renewal to permit verbal renewals. Leases are contracts to which ordinary contract principles apply, and this contract was fully integrated. *See Walsh v. Nelson*, 622 N.W.2d 499, 503 (Iowa 2001). A modification occurs when the parties agree to "incur different duties and obligations from those in their original contract." *Quigley v. Wilson*, 474 N.W.2d 277, 280 (Iowa Ct. App. 1991), *aff'd* 474 N.W.2d 277 (Iowa 1991) (per curiam). A written contract can be verbally modified if the parties consent and act upon it. *Gordon v. Witthauer*, 138 N.W.2d 918, 921 (Iowa 1966). The parties' consent "may be either express or implied from acts and conduct." *Davenport Osteopathic Hosp. Ass'n v. Hosp. Serv., Inc.*, 154 N.W.2d 153, 157 (Iowa 1967). "And whether a contract has been modified by the parties thereto is ordinarily a question of fact." *Id.*

The fact-finder in this case, the magistrate, concluded the "plain and unambiguous" renewal language in the lease controlled, determined there was insufficient evidence to establish a modification, and did not find any "previous verbal renewals of the lease to be controlling or persuasive in such a way that the terms of the lease were remade." On appeal, the district court agreed there is no "persuasive proof that there was a modification, verbal or written, to the clear terms

of the lease" to excuse Short's from its untimely notice of renewal. And on our de novo review of the record, we agree.

Written notice was not provided until March 10, so Short's didn't satisfy the condition precedent to exercise the renewal option at least ninety days prior to expiration of the lease term. We are also not persuaded by (and the record does not support) Short's argument that it gave MWO definitive notice of intent to renew—verbally or otherwise—by conducting renovations, continuing operations, defending the FED actions, executing the annual sidewalk easement agreement, purchasing insurance, or by any potential discussions involving renewal before January 30, 2023. We find that MWO never consented to a modification and that no option existed for Short's to verbally renew the lease.

## C. Equitable Considerations

Last, Short's reiterates on appeal its request for equitable relief that excuses strict compliance with the lease due to equitable estoppel and unclean hands. Here, we reproduce the magistrate's analysis—which the district court also agreed with—and adopt it as our own in declining to award Short's equitable relief:

> Shorts argued that it was excused from the need to provide timely written notice because providing that notice would have been a futile act. The Court has already disposed of this argument by finding that Shorts was required to abide by the terms of the contract as written and provide a written notice of intent to renew. However, even if this misconception falls within the definition of a mistake[,] . . . Shorts could have easily spent a few minutes to send a written notice, even if Shorts believed that doing so would have been futile. When Shorts could have so easily provided written notice prior to the deadline but failed to do so, the equities do not favor granting Shorts an extension. Ultimately, Shorts' argument that . . . a court of equity would be justified in relieving it of the consequences of its failure to provide written notice during the time required fails and the Court declines to find that Shorts properly exercised its option to renew.

As our supreme court has explained, "The consequences of a lessee's failure to exercise an option, however uncomfortable they may be, are self-inflicted. We will not use equitable principles to save a party from the circumstances it created." *SDG Macerich Props., L.P. v. Stanek, Inc.,* 648 N.W.2d 581, 587 (Iowa 2002) (cleaned up). Short's is owed no legal or equitable relief.

## IV. Disposition

We affirm the magistrate and district court's rulings. The temporary stay entered at the time discretionary review was granted is hereby vacated when procedendo issues, and the district court is directed to take any action necessary to issue or enforce the writ, consistent with this opinion.

**AFFIRMED.**